UNITED STATES of America, Plaintiff-Appellee,

v.

Derl GRAY, Defendant-Appellant.

No. 73–1168.

United States Court of Appeals, Sixth Circuit.

Argued June 12, 1973.

Decided Aug. 7, 1973.

James A. Shuffett, Shuffett, Kenton, Anderson & Curry, Lexington, Ky., for defendant-appellant.

Eldon L. Webb, Lexington, Ky., for plaintiff-appellee; Eugene E. Siler, Jr., U. S. Atty., Lexington, Ky., on brief.

Before McCREE and MILLER, Circuit Judges, and NEESE,* District Judge.

WILLIAM E. MILLER, Circuit Judge.

The defendant, Derl Gray, appeals his convictions under a two count indictment charging violations of the federal firearms laws, 18 U.S.C. §§ 922(h)(1) and 922(j). Gray was found guilty un-

---

der both counts by a jury and subsequently sentenced to concurrent three year terms of imprisonment.

The events preceding the defendant's federal convictions began with the actions of state law enforcment officers. In July 1972, Kentucky State Trooper, John R. Miller, received information that the defendant, the operator of a small grocery store in rural Fayette County, Kentucky,[1] was selling beer without a license. In response to this information, Trooper Miller requested Trooper Brodt to attempt to set up a sale. Accordingly, on Sunday, July 16, 1972, Trooper Brodt, in plain clothes, went to the defendant's store and purchased five cans of beer. He then left the store to procure a search warrant and a warrant for Gray's arrest. After obtaining the two warrants, Troopers Miller and Brodt returned to the defendant's store to arrest Gray and execute the search warrant which directed the seizure of "any intoxicating liquors, apparatus for manufacturing intoxicating liquors or materials used in the manufacture of intoxicating liquors."

The defendant was immediately arrested in the store area of the building and the property was searched. After locating and seizing a small quantity of beer in a cooler in the store, Trooper Brodt then proceeded to the upper level of the building to search while Trooper Miller remained on the lower level with the defendant. No alcoholic beverages were found in the upper residence area, but while Trooper Brodt was conducting his search he noticed two rifles leaning against the wall in an upstairs clothes closet. The officer removed the rifles from the closet and took them downstairs to the store area of the building where he copied down the serial numbers of the weapons. Trooper Brodt then returned the weapons to the up-

---

* The Honorable Charles G. Neese, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1. The defendant leased a two-story combination store and dwelling house. The lower level was used by Gray for commercial purposes and the second story was the defendant's residence.

stairs closet.[2]  After searching the outbuilding and the motor vehicles on the property and seizing several cases of beer the officers departed with the defendant.[3]

The officers then ran the serial numbers obtained from the rifles through the computer of the National Crime Information Center and learned for the first time that the firearms had been stolen in Tennessee on June 11, 1972.[4] Trooper Brodt then filed affidavits to obtain a search warrant for the seizure of the rifles and a warrant for Gray's arrest for knowingly receiving stolen property.  On the evening of the same day the two officers returned to the defendant's store to execute the second search warrant and to arrest Gray.  The defendant was arrested but the officers were unable to locate the rifles [5] until the officers indicated that unless Gray turned over the rifles they were going to arrest his common law wife.  Gray then took the officers to two locations and retrieved the rifles.

■  The defendant raises several issues on this appeal but upon oral argument of this case the question arose as to the propriety and effect of Trooper Brodt's actions in removing the rifles from the closet, examining them, and copying down the serial numbers pursuant to a warrant directing the seizure of alcoholic beverages.  This question has now been briefed by the parties and because we decide the case on the basis of this issue, we deem it unnecessary to discuss others.

The starting point of our analysis is the fourth amendment of the Federal Constitution which commands that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized.[6]

We are concerned in this case with a search carried out pursuant to a search warrant and it is in that context that we examine the plain view doctrine which under certain circumstances allows the police to seize objects not specified in the warrant.

The fourth amendment requires that warrants particularly describe the things to be seized.  The specificity of description requirement furthers the goal of privacy which the fourth amendment was designed to protect by insuring that even when a search is carried out pursuant to a warrant, the search is limited in scope so as not to be general or exploratory.  As the Supreme Court stated in Marron v. United States, 275 U.S. 192, 196, 48 S.Ct. 74, 76, 72 L.Ed. 231 (1927):

> The requirement that warrants shall particularly describe the things to be seized makes general searches

2.  Upon returning the rifles to the closet, Trooper Brodt discovered a shotgun, which subsequently was determined to be stolen.  This weapon, however, is not involved in this appeal.

3.  Following the defendant's arrest he was immediately released on bail.

4.  The time lapse between the taking of the serial numbers from the rifles during the first search and receiving the information from the National Firearms Center that the weapons were stolen was approximately three hours.

5.  The defendant's testimony at the suppression hearing in district court indicates that the officers did not conduct a second search but rather demanded that Gray give them the weapons.  The return on the search warrant signed by Trooper Brodt, however, states "Did not find guns in search."  No testimony by the officers on this point appears in the record.

6.  It appears that a judge of the Fayette County quarterly court held the warrants to be invalid with respect to the seizure of the beer and weapons.  The reason for this ruling does not appear from the record.  In any event, in view of the broad language in Elkins v. United States, 364 U.S. 206, 223–224, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) we feel bound to make an independent inquiry, applying federal law on the fourth amendment question.

under them impossible and prevents the seizure of one thing under a warrant describing another. As to what is to be taken, nothing is left to the discretion of the officer executing the warrant.

This statement from *Marron* fails, however, to recognize the plain view doctrine which is now well established in the law of search and seizure. *See* Harris v. United States, 390 U.S. 234, 88 S. Ct. 992, 19 L.Ed.2d 1067 (1968); Ker v. California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963); United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927). The doctrine was fully explained by Mr. Justice Stewart in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). As there stated:

> What the "plain view" cases have in common is that the police officer in each of them had a prior justification for an intrusion in the course of which he came inadvertently across a piece of *evidence incriminating the accused.* The doctrine serves to supplement the prior justification—whether it be a warrant for another object, hot pursuit, search incident to lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. Of course, the extension of the original justification is legitimate only where it is *immediately apparent to the police that they have evidence before them*; the "plain view" doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges. 403 U.S. at 466, 91 S.Ct. at 2038 [Emphasis added].[7]

When the facts of this case are analyzed under the plain view doctrine, the seizure of the rifles by Trooper Brodt cannot be justified. The first prong of the doctrine requires that "the police officer . . . had a prior justification for an intrusion." This requirement was met in the present case since the officers were acting pursuant to a legitimate search warrant directing the seizure of alcoholic beverages upon the defendant's property. The second prong of the doctrine requires that during the search the officers "came inadvertently across a piece of evidence incriminating the accused." Further, "the extension of the original justification is legitimate only where it is immediately apparent to the police that they have evidence before them." Here, Officer Brodt inadvertnetly discovered the rifles in the upstairs clothes closet while searching for alcoholic beverages but it was not "immediately apparent" that the rifles were "evidence incriminating the accused." The rifles were not contraband; there was no nexus between the rifles and the crimes of selling or possessing intoxicating liquor without a license; nor did the officers at that time have any knowledge that the rifles were evidence of any other crimes. It was only after Trooper Brodt had seized the weapons, copied down the serial numbers, left the defendant's premises, and then run the information taken off the rifles through the National Crime Information Center that he learned that they were stolen and hence incriminating. This can hardly be characterized as being "immediately apparent." To allow the police to seize objects, unincriminating at the time of seizure, would not in our view comport with the plain view doctrine.

7. The Court is cognizant of the fact that Part II C of Mr. Justice Stewart's opinion in Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) was only concurred in by three other justices. This Court has, however, explicitly accepted the full reasoning of Mr. Justice Stewart's opinion concerning the plain view doctrine in Lewis v. Cardwell, 476 F.2d 467 (6th Cir. 1973) and Cook v. Johnson, 459 F.2d 473 (6th Cir. 1972). We have also implicitly accepted that reasoning in United States v. Gargotto, 476 F.2d 1009 (6th Cir. 1973).

■ In the context of a search pursuant to a warrant, the doctrine is a recognition of the fact that when the police come across immediately recognizable incriminating evidence not named in the warrant they should not be required to close their eyes to it, regardless of whether it is evidence of the crime they are investigating or evidence of some other crime. The doctrine is also a recognition of the fact that it would be a needless inconvenience to require the police to obtain another warrant. However, it must be "immediately apparent" to the police that the object is in fact incriminating or the seizure of the object would be without probable cause and would turn the search into a general or exploratory one. As stated by Mr. Justice Stewart in Coolidge v. New Hampshire, *supra*, at 466, 91 S.Ct. 2038: "the 'plain view' doctrine may not be used to extend a general exploratory search from one object to another until something incriminating at last emerges." This is precisely what occurred in this case since the rifles obviously were not receptacles of alcoholic beverages nor were they contraband and the officers' original observation of the weapons was nothing more than a general rummaging. Since the rifles were not incriminating evidence at the time Trooper Brodt removed them from the closet and copied down the serial numbers, this police action cannot be sanctioned under the plain view doctrine. *See* Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969) (Stewart, J., concurring opinion).

■ The government argues that Trooper Brodt's actions were not a search or a seizure. Whether or not the officer's actions constituted a technical search, they clearly were a seizure. Officer Brodt, to be sure, could not help noticing the rifles in the closet as he had every right to do. But he did not simply see or observe the presence of the rifles (which as we have indicated were not contraband nor recognized by the officer to be such). Instead he removed them from the closet, carried them to the lower floor of the building and then copied down the serial numbers. The fact that he did not take the rifles with him after conducting the search does not make his actions any less a seizure. Removing the rifles from the closet was a seizure as was the copying down of the serial numbers. *See* United States v. Sokolow, 450 F.2d 324 (5th Cir. 1971).[8] Since seizures, like searches, cannot be undertaken by the police without probable cause, whether with or without a warrant, Trooper Brodt's actions were performed without the sanction of this constitutionally mandated requirement. Therefore, the rifles should have been suppressed since the second warrant was impermissively tainted by Officer Brodt's initial seizure of the weapons. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).[9]

Reversed and remanded for proceedings not inconsistent with this opinion.

---

8. In United States v. Sokolow, 450 F.2d 324, 326 (5th Cir. 1971) a police officer entered the defendant's garage and copied down the serial numbers of air conditioners stacked there. The court characterized the police actions as "Seizures of the serial numbers."

9. Since the defendant turned the rifles over to the officers only after the officers threatened to arrest the defendant's wife, no plausible argument can be made that Gray "voluntarily" gave the officers the weapons.