UNITED STATES of America, Plaintiff,

v.

Roy WINSTON, Defendant.

Crim. No. 4–80758.

United States District Court,
E. D. Michigan, S. D.

March 22, 1974.

Peter M. Rosen, Drug Abuse Law Enforcement, Detroit, Mich., for plaintiff.

Richard R. Nelson, Detroit, Mich., for defendants.

## MEMORANDUM OPINION

JAMES HARVEY, District Judge.

Defendant is under indictment for violation of Title 18 Appendix, United States Code, Section 1202(a)(1); possession of a firearm by a convicted felon. The firearm which is the basis of this indictment was seized in a raid by federal agents of the office of Drug Abuse Law Enforcement on August 8, 1973, on the premises of 18603 Harlow, Detroit, Michigan. The raid was carried out pursuant to a search warrant issued by a United States Magistrate on the previous day. Defendant . has brought a Motion to Quash the Search Warrant and Suppress the Evidence Seized.

The search warrant in question authorized a search for firearms and controlled substances consisting of heroin and evidence of illegal activity relative to narcotics, in violation of 21 U.S.C. Section 841(a)(1). On March 11, 1974, the Court ruled that the affidavit in support of the search warrant failed to set forth underlying circumstances such

that an independent magistrate could conclude that there was probable cause to believe that firearms would be found on the premises. The Court found, however, that the affidavit was adequate in describing drug activity at 18603 Harlow, and thus upheld the validity of the warrant as to a search for narcotics and related paraphernalia at those premises.

An evidentiary hearing was then ordered so as to determine whether the .30 caliber Universal M–1 carbine rifle which was seized during the August 8, 1973 raid could in some manner provide a basis for this indictment, or whether it should be suppressed as illegally seized evidence.

At the hearing, the government introduced the testimony of two federal agents who participated in the execution of the warrant. The following events took place relative to that execution: Between 1:00 and 1:30 P.M. several agents met for a briefing conducted by Special Agent John Manson. Several facets of the pending raid were discussed, among them that the defendant was a convicted felon and that any firearms found on the premises would constitute evidence of a federal crime. The agents were told to expect guns to be present. However, it was very explicitly conveyed to the assembled agents that this was to be a raid of which the overriding mission was to seize narcotics. At approximately 3:00 P.M. the agents entered the Harlow Street premises. Special Agent James Dockery came through the front door. He saw a closet nearby and entered it. Therein he saw the M–1 carbine rifle in plain view. He immediately handed the rifle to Special Agent Manson, who because of his training with Alcohol, Tobacco and Firearms recognized that the gun was made in Florida and thus constituted evidence of a federal crime. Agent Dockery stated that there were three reasons for walking into the closet: First, to secure the premises; second, to find narcotics; and third, to find firearms. At the point in time when the closet was opened, the agents had not yet discovered the presence of heroin in the basement of the home.

In United States v. Gray, 484 F.2d 352, filed August 7, 1973, the Sixth Circuit stated that "under certain circumstances" the plain view doctrine "allows the police to seize objects not specified in the warrant." (P. 354). In *Gray*, officers entered a home with a search warrant to seize evidence of illicit liquor sales. While on the premises, an officer found several rifles leaning against a wall in an upstairs closet. The officer took the rifles downstairs and copied their serial numbers. A later check indicated that the rifles were stolen. A search warrant was obtained, and the officers returned to the premises and seized the weapons. This procedure, held *Gray*, must result in the suppression of the rifles.

According to *Gray*, Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), mandates that any evidence seized under the plain view doctrine must meet a three-pronged test. First, the doctrine requires that there be "prior justification for an intrusion." That requirement was met in the *Gray* case, "since the officers were acting pursuant to a legitimate search warrant directing the seizure of alcoholic beverages upon the defendant's property." (P. 355 of 484 F.2d). In the present case, the agents were acting pursuant to a legitimate search warrant directing the seizure of narcotics on the Harlow Street premises. Thus, the agents had prior justification for the intrusion.

The second prong of the doctrine requires that during the search the agents or officers come "inadvertently" across the evidence which incriminates the accused. In *Gray*, the officer came inadvertently across the rifles in the upstairs closet while searching for items specified in the search warrant. In the present case, the M–1 carbine rifle was found by Agent Dockery immediately after the agents had entered the house and he had looked into a front hall closet. Defendant seeks to distinguish *Gray* from the present case at this point by

arguing that in *Gray* the executing officers did not know before they entered the premises that any rifles would be found, while here, since the agents anticipated that rifles were on the Harlow Street premises, their finding rifles or any other firearms cannot be classified as inadvertent.

■ The meaning of the term "inadvertent" within the framework of the plain view doctrine is set forth in Coolidge v. New Hampshire, supra, at 469–471, 91 S.Ct. at 2046:

"The second limitation is that the discovery of evidence in plain view must be inadvertent. The rationale of the exception to the warrant requirement, as just stated, is that a plain-view seizure will not turn an initially valid (and therefore limited) search into a 'general' one, while the inconvenience of procuring a warrant to cover an inadvertent discovery is great. But where the discovery is anticipated, where the police know in advance the location of the evidence and intend to seize it, the situation is altogether different. The requirement of a warrant to seize imposes no inconvenience whatever, or at least none which is constitutionally cognizable in a legal system that regards warrantless searches as *'per se* unreasonable' in the absence of 'exigent circumstances.'

"If the initial intrusion is bottomed upon a warrant that fails to mention a particular object, though the police know its location and intend to seize it, then there is a violation of the express constitutional requirement of 'Warrants . . . particularly describing . . . [the] things to be seized.' The initial intrusion may, of course, be legitimated not by a warrant but by one of the exceptions to the warrant requirement, such as hot pursuit or search incident to lawful arrest. But to extend the scope of such an intrusion to the seizure of objects—not contraband nor stolen nor dangerous in themselves—which the police know in advance they will find in plain view and intend to seize, would fly in the face of the basic rule that no amount of probable cause can justify a warrantless seizure."

What *Coolidge* therefore requires is a search warrant for any item of evidence which the police anticipate finding, *but* for which they have probable cause to support the issuance of a search warrant. It goes without saying that Drug Enforcement Administration agents always anticipate firearms when they execute a search warrant on a suspected "dope pad". This is not to say, however, that they have the requisite knowledge to support a search warrant for such items. In the present case, the police specifically knew, as the affidavit in support of the warrant indicates, only that an informant believed that the defendant possessed a sawed-off shotgun. As has been stated, this belief is not sufficient to support a search warrant, and thus it follows that the agents did not possess sufficient knowledge with respect to other firearms on the premises and could not have procured a search warrant for them. Furthermore, that the agents, at a briefing session prior to the execution of the warrant, discussed the possibility of the presence of firearms on the premises to be searched is no indication that when the agents came upon such weapons, it was not "inadvertently". It is not suggested that the agents knew that an M–1 carbine was to be found. Compare the analysis of the majority view in *Coolidge* by Justice White in his dissent at pp. 516–517, 91 S.Ct. 2022.

It is also not suggested that the agent who looked into the closet had no right to be there. Indeed, he had every right to be there, as the warrant clearly specified that the entire premises could be searched for narcotics. This is not a situation where an agent in bad faith stretches the bounds of the search warrant so as to place himself in a position to see that which he has no right to. The Court finds that the M–1 carbine

was discovered inadvertently in the search for narcotics.[1]

■ The third prong of the plain view exception to the general search warrant requirement is that it be "immediately apparent" to the police that they have, in fact, inadvertently discovered "evidence incriminating the accused." (P. 355 of 484 F.2d). There is no doubt that the first agent who initially seized the M-1 carbine rifle recognized it as potential evidence of a federal crime, for he knew that the defendant was a convicted felon. He immediately verified this belief by checking the gun with his fellow agent, who from personal knowledge determined that it was made outside of Michigan. The defendant attempts to make an argument out of the fact that the seizing agent did not know that the M-1 carbine was made out of state and that it was necessary for him to verify this fact with his fellow agent. To accept this argument is to allow the admissibility of evidence to turn upon the happenstance of which of several executing agents made the initial seizure, when in fact the seizure was made by all of the agents acting in concert. Certainly there is not present the evil of the *Gray* case, where the rifles were in themselves innocuous, and it was necessary to run a check to determine if they had been stolen. In this case, the M-1 carbine was not innocuous to the seizing agent, as he knew that the defendant was a convicted felon. This fact in itself may well constitute the requisite probable cause to legitimate the seizure, but it seems permissible within the plain view doctrine that the seizing agent verified the out-of-state origin of the rifle with a fellow agent who was also conducting the search.

Therefore, it is concluded that the seizure of the M-1 carbine was permissible under the guidelines of United States v. Gray, supra. The foregoing reasons dictate that the motion be denied.

---

1. An alternative ground may support the seizure of the rifle. Law enforcement officials may in some cases justifiably secure the premises to be searched to proect themselves from danger. Evidence found in the process of so doing may be seized. Warden v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967); United States v. Miller, 145 U.S.App.D.C. 312, 449 F.2d 974 (1971). While the agents in this case did not enter in hot pursuit, there nevertheless was adequate reason for them to feel insecure. Narcotic traffickers do not usually operate alone, nor do they operate unarmed. The agents knew in fact that several other people in addition to the defendant were involved in narcotics traffic at the Harlow Street premises. One of them had been arrested by federal agents on June 21, 1973, in another raid. The agents also expected weapons, possibly a sawed-off shotgun, to be present. Defendant himself had been arrested previously on a firearms charge. This knowledge constitutes exigent circumstances which would justify the search by the agents of any area within the premises capable of hiding a man with a weapon. As per Coolidge v. New Hampshire, *supra*, the initial intrusion into an area may be justified by any exception to the warrant requirement. Cf., United States v. Broomfield, 336 F.Supp. 179 (E.D.Mich.1972).