UNITED STATES of America, Appellee,

v.

Arthur C. LACEY, Appellant.

No. 75–1461.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 14, 1975.

Decided March 3, 1976.

Rehearing Denied April 1, 1976.

Heaney, Circuit Judge, dissented and filed opinion.

1. United States District Court for the Eastern District of Missouri, Honorable H. Kenneth Wangelin.

J. Arnot Hill, Kansas City, Mo., for appellant.

J. Whitfield Moody, Asst. U. S. Atty., Kansas City, Mo., for appellee; Bert C. Hurn, U. S. Atty., and Stephen L. Hill, Asst. U. S. Atty., Kansas City, Mo., on brief.

Before HEANEY, ROSS and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

Arthur C. Lacey appeals from a conviction by jury of two counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1). Lacey was sentenced to two concurrent four-year terms of imprisonment, with a special parole of three years upon completion of the sentence. The sole issue presented on appeal is the validity of the use in evidence of an inventory slip containing the serial numbers of United States currency taken from Lacey and placed into protective custody by federal law enforcement officers.

On September 4, 1974, Sandra Jackson, acting as an informant for the Federal Drug Enforcement Administration (DEA) in Kansas City, Missouri, was searched by DEA agents and given $45 in cash for the purpose of purchasing heroin from Lacey, who was a suspected dealer in various controlled substances. The currency was in the form of two $20 bills and one $5 bill, and the serial numbers were recorded by the agents. Jackson proceeded to the Commodore Hotel in Kansas City, where the landlady had informed DEA agents that Lacey was living with Brenda Morrison in an apartment rented in Morrison's name. There, Jackson allegedly purchased heroin from Lacey, giving him the $45 in payment. Jackson tendered the heroin to the DEA agents and informed them that she had observed a quantity of heroin in the apartment.

A similar series of events was repeated on September 5, 1974; and on that afternoon, DEA agents applied for and received a search warrant for the seizure of heroin and cocaine in Morrison's apartment. On arrival at the apartment at approximately 8:15 p. m. that evening, the DEA agents knocked and announced their identity and purpose. When no response occurred, the agents forced the door and entered. Lacey was found in a bedroom holding a revolver, and Morrison was also present in the apartment. After disarming Lacey, the agents proceeded to search the living room and that part of the bedroom in the immediate vicinity of Lacey. This search revealed a quantity of marijuana, and Lacey and Morrison were immediately arrested on charges of possession of marijuana. In a continuation of the search in the immediate area of Lacey and Morrison, two separate groups of United States currency totalling $700 in value were discovered. Upon inquiry by the agents, Lacey stated that he was the owner of the currency.

Since the door to Morrison's apartment had been broken and could no longer be secured, the DEA agents took the currency to the Kansas City police station where Lacey and Morrison were placed in confinement. The currency and the weapon were deposited in a property room and were returned to Lacey on September 9, 1974, after he had been released on bond. At the time of the deposit of the currency, a DEA agent recorded the serial number of each bill on the relevant inventory slip in the property room. Subsequently, DEA agents discovered from the inventory slip that serial numbers of two of the $20 bills taken into custody matched those of the "buy money" given Jackson for her purchases from Lacey on September 4th and 5th.

On the basis of this information, Lacey was indicted on October 24, 1974, on two counts of distribution of heroin in violation of 21 U.S.C. § 841(a)(1). A pretrial

evidentiary hearing was held on Lacey's motion to suppress the use in evidence of the currency seized by the DEA agents. The District Court[1] orally indicated that the motion was conditionally denied subject to reconsideration in light of evidence adduced at trial, and it did not subsequently alter this determination. At trial, the government introduced the inventory slip and the reports of the DEA which listed the serial numbers of the "buy money".

Lacey was found guilty on both counts on March 19, 1975, after a full jury trial; and a motion for new trial raising the issue of suppression was denied. Lacey appeals, claiming that the District Court erred in not suppressing the use of the inventory slip in evidence. We disagree and therefore affirm the decision of the District Court.

Lacey does not contest the validity of the search warrant, the legality of the entry and presence of the DEA agents in the apartment, nor the legality of his arrest. Rather, he contends that the custodial detention of the currency and the resultant warrantless copying of the serial numbers constituted an unreasonable search and seizure.

Lacey argues that the discovery and examination of the currency comprised an illegal "general search" because the search warrant failed to describe specifically or even mention the "buy money". See Marron v. United States, 275 U.S. 192, 195, 48 S.Ct. 74, 75, 72 L.Ed. 231, 236 (1927). The District Court found that the agents did not believe that there was any substantial likelihood that the "buy money" would be present in the apartment, and that the agents therefore did not have probable cause of sufficient character to enable them to secure a warrant for that specific currency. This finding cannot be said to be erroneous on the evidence on the record.

Moreover, the fact that the "buy money" was not described in the search warrant could only be relevant in the present circumstances to a seizure of the currency and not to the discovery thereof by search. Lacey does not contend that the search itself exceeded the limits of the warrant insofar as it pertained to the search of the areas in which the currency was discovered.

Once the currency was validly exposed to the view of the agents and Lacey had indicated that it belonged to him, the warrantless removal of the currency into protective custody cannot be typified as a "seizure" for Fourth Amendment purposes.[2] As the District Court properly found, the evidence clearly established that the currency was not removed from the apartment for evidentiary purposes or as contraband. The money was lawfully taken into custody for the sole purpose of safekeeping, since the apartment door could not be secured after it had been forced during entry.[3] See United States v. Lipscomb, 435 F.2d 795, 799–800 (5th Cir. 1970), cert. denied, 401 U.S. 980, 91 S.Ct. 1213, 28 L.Ed.2d 331 (1971); United States v. Blackburn, 389 F.2d 93, 95 (6th Cir. 1968); Fagundes v. United States, 340 F.2d 673, 676 (1st Cir. 1965).

After the currency had been lawfully discovered and removed by the DEA agents for safekeeping, Lacey could no longer reasonably expect any right of privacy with respect to the serial numbers. See United States v. Jenkins, 496 F.2d 57, 73 (2d Cir. 1974), cert. denied, 420 U.S. 925, 95 S.Ct. 1119, 43 L.Ed.2d 393 (1975). See also Katz v. United States, 389 U.S. 347, 361, 88 S.Ct. 507,

---

1. The Honorable Elmo B. Hunter, United States District Judge for the Western District of Missouri.

2. This is not to say that the currency was within the "plain view" exception of Coolidge v. New Hampshire, 403 U.S. 443, 464–73, 91 S.Ct. 2022, 2037, 29 L.Ed.2d 564, 581 (1971); the ultimately incriminating nature of the currency could not have been "immediately apparent" to the DEA agents. See United States v. Williams, 523 F.2d 64, 66 (8th Cir. 1975).

3. There was no evidence that Lacey protested this safekeeping procedure. Moreover, there is no suggestion anywhere in the record that the action of the agents was pretextual or anything other than a reasonable procedure calculated to safeguard the currency as well as protect the agents from potential future claims should the money later "disappear" from Morrison's apartment.

516, 19 L.Ed.2d 576, 587 (1967) (Harlan, J., concurring). Lacey's contention that the mere listing of the serial numbers of each bill as part of the inventory procedure was an unreasonable search and seizure is therefore without merit. A similar argument was rejected by the Second Circuit in *United States v. Jenkins, supra,* 496 F.2d at 72–74. In that case, the defendant had been stopped on a potential traffic violation, and, after a valid search, he was arrested on a concealed weapons charge. When he was incarcerated at a local jail, his clothing and a wallet containing currency were inventoried and stored for safekeeping. Eight days later, a federal agent examined the defendant's effects in storage and compared the serial numbers of the currency with a list of numbers of currency recently reported stolen from a federally insured bank. Certain numbers coincided and, the next day, the agent seized the relevant currency without a warrant for use as evidence in the resultant trial of the defendant for bank robbery. On review of the denial of a motion to suppress the use of the currency in evidence, the Second Circuit held that the examination by the federal agent constituted a mere "second look" at property which had been fully exposed to the view of law enforcement officers at the time of its initial taking, and that therefore no reasonable expectations of privacy were invaded and no search occurred when the agent looked again at what had already been lawfully observed.

The Ninth Circuit had similarly resolved challenges to the comparative examination of currency which was lawfully in police custody. *See Westover v. United States,* 394 F.2d 164 (9th Cir. 1968); *Evalt v. United States,* 382 F.2d 424 (9th Cir. 1967). In those cases, the currency was in the possession of the defendants as the fruit of bank robbery, the crime for which the arrests were made, and thus was subject to warrantless seizure and examination at the time of the arrest. The Second Circuit in *Jenkins* rejected attempts to distinguish *Westover* on this basis, holding:

> [T]his distinction has no legal significance. For all practical purposes the serial numbers on bills would in both cases be fully exposed to police view, whether the money were seized as the fruit of a crime or were simply taken from the prisoner's wallet at the time of his arrest and placed in an envelope in the jail safe for "safe keeping." Under either circumstances [sic] it cannot be said that the "second look" amounts to an intrusion into an area where the owner could any longer reasonably expect privacy.

496 F.2d at 74.

*United States v. Gray,* 484 F.2d 352 (6th Cir. 1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974), and *United States v. Sokolow,* 450 F.2d 324 (5th Cir. 1971), both cited by Lacey, are inapposite. In each case, the law enforcement officers were held to have illegally come upon the items from which serial numbers were copied. The listing of the serial numbers was thus evidence flowing from a threshold illegality, and therefore inadmissible.[4] There is no

---

4. In *United States v. Gray,* 484 F.2d 352 (6th Cir. 1973), *cert. denied,* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974), state law enforcement officers had procured a valid search warrant for the seizure of intoxicating liquors and apparatus or materials for manufacturing intoxicating liquors. The officers entered the specified property and arrested the suspect, then commenced the search. A small quantity of liquor was discovered on the lower level of the property, but a search of the upper level revealed only two rifles in a clothes closet. An officer removed the rifles from the closet, copied down their serial numbers, and returned them to their proper location. A check with the National Crime Information Center revealed that the weapons were stolen, and the defendant was charged with violation of federal firearms laws. The Sixth Circuit held that the seizure of the rifles was illegal, in that the "plain view" doctrine could not justify an intrusion on items whose incriminating nature was not "immediately apparent". *See Coolidge v. New Hampshire,* 403 U.S. 443, 466, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583 (1971). The resultant listing of the serial numbers was thus a further illegality, and the court held that the rifles, confiscated after the discovery of the illegal possession, should have been suppressed from evidence.

In *United States v. Sokolow,* 450 F.2d 324 (5th Cir. 1971), a police officer arrested a sus-

question in this case that the access of the DEA agents to the currency was lawful. We cannot say that the subsequent listing of the serial numbers of the currency as part of the inventory procedure invaded any reasonable expectations of privacy. We therefore hold that no unreasonable search or seizure occurred when the DEA agents simply transcribed into a permanent form serial numbers of currency which they had already lawfully observed.[5]

The judgment of the District Court is affirmed.

HEANEY, Circuit Judge (dissenting).

I respectfully dissent. The police inventory of the currency claimed to have been taken into custody for safekeeping was a search under the Fourth Amendment. The invasion of Lacey's right to privacy with respect to the serial numbers of the currency can be justified only if the intrusion was reasonable. To say that the copying of the serial numbers was a mere "second look" at property which had been fully exposed to law enforcement officers at the time of the initial taking, is a fiction in which I am unwilling to indulge. Moreover, unlike the identification of a particular car, which has been found to be reasonable in light of the need to protect the police

against groundless claims for "lost" property, the identification of each bill served no reasonable police purpose. Given the fungible nature of money, Lacey's property claim against the police was for $700, not for the particular bills seized. *United States v. Lawson,* 487 F.2d 468 (8th Cir. 1973), is controlling and should be followed.

Bit by bit, over the last few years, we have eroded the protections of the Fourth Amendment. The erosion is often justified on the grounds that the guilty should not go free because of a technicality. In using this rationale, we close our eyes to the daily erosion of the privacy of innocent citizens; erosion which ordinarily does not come to the public's attention and which the citizen is largely powerless to prevent. One day soon, if the erosion continues, the Fourth Amendment will be a "dead letter," the rights of our citizens will have been diminished, and the Republic placed in danger.

---

pect pursuant to probable cause outside defendant's garage. The officer saw several air conditioning units in the garage, and entered without a warrant and copied serial numbers from the units. This information established that the air conditioners were stolen property, and the defendant was arrested. The Fifth Circuit reversed the district court's denial of a motion to suppress the evidence of the serial numbers and the evidence obtained as a result thereof, holding that no justification existed for warrantless entry and search of the garage and that the serial numbers were thus inadmissible as the fruits of an illegal search.

**5.** In *United States v. Lawson,* 487 F.2d 468 (8th Cir. 1973), this Court addressed the subject of warrantless inventory searches of motor vehicles in police custody. The Court found that police custody alone might justify reasonable inventory measures to protect the vehicle itself or property within plain view therein, but that such protective measures did not include breaking into a locked trunk, which was the challenged search in that case.

The viewing of the serial numbers in the present case, while accomplished pursuant to an inventory procedure, is more analogous to an identification of an automobile than a search of its contents. Several circuits have recognized that a warrantless inspection of a motor vehicle by law enforcement officials who are lawfully present on the scene, which does not damage the vehicle and is limited to determining the correct identification number thereof, is not a "search" under the Fourth Amendment or, if a "search", is not unreasonable. *See United States v. Ware,* 457 F.2d 828, 830 (7th Cir.), *cert. denied,* 409 U.S. 888, 93 S.Ct. 139, 34 L.Ed.2d 145 (1972); *United States v. Polk,* 433 F.2d 644, 646–48 (5th Cir. 1970); *United States v. Johnson,* 431 F.2d 441 (5th Cir. 1970); *United States v. Graham,* 391 F.2d 439, 443 (6th Cir.), *cert. denied,* 393 U.S. 941, 89 S.Ct. 307, 21 L.Ed.2d 278 (1968); *Cotton v. United States,* 371 F.2d 385, 393–94 (9th Cir. 1967). *Compare Simpson v. United States,* 346 F.2d 291, 294 (10th Cir. 1965); *but see United States v. Self,* 410 F.2d 984, 986 (10th Cir. 1969).