**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Donald CHAPMAN, Defendant-Appellant.**

No. 76–1744.

United States Court of Appeals,
Sixth Circuit.

Argued Oct. 18, 1976.

Decided Feb. 9, 1977.

James R. Jenkins, John W. Tapp, F. Randall Karfonta, Detroit, Mich., for defendant-appellant.

Philip Van Dam, U. S. Atty., Loren G. Keenan, John P. Conley, Detroit, Mich., for plaintiff-appellee.

Before EDWARDS, McCREE and LIVELY, Circuit Judges.

EDWARDS, Circuit Judge.

Appellant, through the Detroit Legal Defenders office, seeks reversal for new trial of his conviction by a jury for possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. §§ 5845, 5861(d), 5871 (1970). He claims that his rights were abused by his being led to acknowledge the ownership of the sawed-off shotgun and a loaded rifle—the latter of which he claims was illegally seized.

The facts show that Detroit police secured a search warrant for marijuana concerning a particular house in Detroit. This record discloses that 11 people lived in the house, and at least 10 people were present during the raid. In the course of the search the officers found appellant Chapman in the basement of the house with a shoe box, which a policeman inspected and found to contain marijuana. The officer arrested Chapman and told him to sit on a couch. Shortly thereafter another officer saw and seized a loaded sawed-off shotgun which was under the couch on which Chapman was seated. After Chapman's arrest in the basement, and after *Miranda* warnings had been given him, another officer searching the house found a rifle in plain view in defendant's mother's bedroom upstairs. The officer seized the rifle and carried it downstairs. In defendant's presence he said to another officer that he had found the rifle in defendant's mother's room and he guessed "the other one" (the sawed-off shotgun) must be hers too. Defendant then said that the guns were his and that his mother didn't know he had them.

Appellant was subsequently indicted on three counts: 1) possession of an unregistered sawed-off shotgun, in violation of 26 U.S.C. §§ 5845, 5861(d), 5871 (1970); 2) possession of the same weapon, being a felon, in violation of 18 U.S.C. Appendix § 1202(a)(1) (1970), and 3) possession of a semi-automatic rifle, being a felon, in violation of 18 U.S.C. Appendix § 1202(a)(1)(1970).

Appellant's defense was assigned to counsel from the Detroit Legal Defenders office. Prior to trial, counsel filed 1) a motion to suppress the two weapons referred to above and "any other evidence obtained as a result of an illegal search and seizure on or

about April 18, 1974 . . .."; 2) a motion to suppress "alleged admissions, statements and confessions," and 3) a motion to compel election or separate trials of counts pursuant to Rule 14 of the Federal Rules of Criminal Procedure. Counsel briefed all three motions emphasizing in his arguments that the affidavit relied upon for the search warrant was insufficient to establish probable cause for the search; that the search was illegal for failure to comply with the knock and announce requirements of 18 U.S.C. § 3109 (1970), "Plus such reasons as will be brought out in the hearing;" and that the felony proofs required by Counts 2 and 3 would prejudice the trial of Count 1.

After a full evidentiary hearing on these motions (at which the facts pertaining to the disputed statement were fully developed), the District Judge denied suppression of the guns and of the statement, but separated the counts of the indictment for trial and set a trial date for the first count which alleged possession of the unregistered sawed-off shotgun.

Thereafter a newly assigned counsel for the same Detroit Legal Defenders office filed a motion for delayed filing of a pretrial motion and accompanied it with another motion to suppress. This motion was directed at the rifle and at appellant's subsequent admission of his ownership of both guns. It claimed that seizure of the rifle was illegal and that the statement sought to be suppressed was a product of said illegality within the rationale of the *Wong Sun* case. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

The District Judge, noting the previous full evidentiary hearing on motions to suppress all of the same evidence (albeit on different reasoning), denied the delayed motion.

On trial of the first count to a jury, appellant was convicted and sentenced to five years, subject to parole at any time under the provisions of 18 U.S.C. § 4208(a)(2) (1970).

Before this court appellant presents three contentions: First, that the District Judge abused his discretion by failing to grant a hearing on the delayed motion to suppress evidence; second, that original defendant's counsel's "lack of due diligence" deprived appellant of a fair trial; and third, that the District Judge erred in denying appellant's motion for acquittal on the grounds that there was no independent evidence to corroborate his admissions at the scene.

We affirm the conviction.

█ The second stated appellate issue we regard as frivolous, primarily since it was never presented to the District Court, it is not properly before this court. Additionally, appellant's second attorney may have had a better suppression rationale; but three pretrial motions briefed and argued with a successful result on one do not appear to represent lack of due diligence or ineffective assistance of counsel under the Sixth Amendment. *See Beasley v. United States*, 491 F.2d 687 (6th Cir. 1974).

As to the third stated issue, we find ample evidence in this record for the District Judge to have denied appellant's motion for acquittal. Appellant was a resident in the house where the raid occurred. He slept in the basement where he was arrested and where the marijuana and the sawed-off shotgun were found. The officer who saw and seized the shotgun testified that he had seen something under the couch where appellant had been told to sit after his arrest, that he asked him to get up and, "I observed his left foot hit an object under the sofa." The object turned out to be the loaded sawed-off shotgun which was the subject of the indictment, and as to which appellant subsequently admitted ownership. *See United States v. Murrie*, 534 F.2d 695 (6th Cir. 1976).

Appellant's primary emphasis, however, is on his claim under his first stated issue that seizure of the rifle in the upstairs bedroom was illegal and, hence, that his subsequent statement was illegally admitted under the *Wong Sun* rationale. He points out that the rifle was not contraband and was not one of the objects of search and seizure described in the search warrant. In addition, it was seized, brought into defendant's presence, and there used to moti-

vate appellant's admission of ownership of both weapons.

Appellant relies principally upon *United States v. Gray*, 484 F.2d 352 (6th Cir. 1973). In that case officers procured a search warrant for intoxicating liquor (beer) which they had probable cause to believe Gray was selling without a license. During the search of the premises one of the officers came upon two rifles which he "seized" temporarily in order to take down their serial numbers and run same on the computer at the National Crime Information Center. Learning through this method that the rifles were stolen, the officers procured a second warrant for the rifles and subsequently seized and introduced them in evidence at Gray's trial for violation of the Federal Firearms Act. The court particularly noted:

> The rifles were not contraband; there was no nexus between the rifles and the crimes of selling or possessing intoxicating liquor without a license; nor did the officers at that time have any knowledge that the rifles were evidence of any other crimes.
>
> *United States v. Gray*, 484 F.2d 352, 355 (6th Cir. 1973).

In the *Gray* case, the rifles, of course, were the principal evidence of the violation of law for which Gray was convicted. The rifles had not been referred to in the original search warrant. They were not contraband in themselves and the officers had no reason to believe that they were stolen. Finding the listing of their numbers to be a seizure, this court held the seizure without warrant or probable cause to be illegal.

In our instant case, as we have seen, appellant Chapman was convicted of possessing a sawed-off shotgun. That weapon was contraband in itself and no issue is now argued as to its seizure. The rifle, the seizure of which is claimed to be illegal, was never offered in evidence in the instant trial. Its relationship to the conviction is, at best, somewhat attenuated. appellant had been warned of his right to remain

silent. He could have done so. No question was addressed to him. If he wished to volunteer a response, he could have done so by admitting ownership of the rifle without admitting ownership of the sawed-off shotgun.[1]

Since, however, the point of attenuation of the impact of an illegal seizure under the *Wong Sun* doctrine is difficult to define, we plant our affirmance of the District Judge's refusal of the belated motion to suppress the admission upon entirely different grounds.

▮ First, in view of the extensive pretrial motions, full hearing thereon, and partial relief, we find no abuse of judicial discretion in this case. Second, we believe the police possession of the rifle under the facts of this case was not an "unreasonable" seizure under the rationale of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

Contrary to the facts in *United States v. Gray, supra,* the basic police concern was not over the selling of beer without a license; it was the possession, presumably for sale, of a "shoe box of marijuana." In addition, appellant was not alone in the house. Contrary to the facts in *United States v. Gray,* there were at least nine other people present during the raid. In a search warrant raid on a portion of the Detroit drug scene, police officers have good reason to secure any deadly weapons they may come upon until their authorized mission has been accomplished.

In *Terry v. Ohio* the Supreme Court said:
> We are now concerned with more than the governmental interest in investigating crime; in addition, there is the more immediate interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him. Certainly it would be unreasonable to require that police officers take unnecessary risks in the performance of their

---

1. We have considered whether police guile in displaying the rifle as belonging to appellant's mother rendered his admission involuntary and have concluded in the negative.

duties. American criminals have a long tradition of armed violence, and every year in this country many law enforcement officers are killed in the line of duty, and thousands more are wounded. *Terry v. Ohio*, 392 U.S. 1, 23, 88 S.Ct. 1868, 1881, 20 L.Ed.2d 889 (1968).

The Supreme Court, of course, also noted: A search for weapons in the absence of probable cause to arrest, however, must, like any other search, be strictly circumscribed by the exigencies which justify its initiation. *Warden v. Hayden*, 387 U.S. 294, 310, [87 S.Ct. 1642, 1652, 18 L.Ed.2d 782] (1967) (Mr. Justice Fortas, concurring). Thus it must be limited to that which is necessary for the discovery of weapons which might be used to harm the officer or others nearby, and may realistically be characterized as something less than a "full" search, even though it remains a serious intrusion. *Terry v. Ohio*, *supra* at 25–26, 88 S.Ct. at 1882.

In our instant case the basic intrusion was authorized by a judicially issued search warrant. The officer found the rifle when he was where he had a clear right to be. We view his physical seizure of the weapon and his maintaining possession of it, at least until the search party departed from the premises, to be justified by legitimate concern about police safety.

The judgment of the District Court is affirmed.

McCREE, Circuit Judge (dissenting).

I respectfully dissent. The principal issue presented on appeal was whether the district court should have granted a second suppression hearing to permit consideration of appellant's second motion to suppress. In the second motion, which presented grounds not asserted in the first motion, appellant sought to suppress not only a rifle claimed to have been illegally seized, but also his oral statement elicited by the police when they confronted him with the seized weapon. The majority opinion holds that the seizure of the rifle, which was not claimed to be either contraband or evidence of a crime, was justified by the officers' concern for their safety.[1] The facts presented in the record on appeal are insufficient to support this conclusion.

I agree that the searching officers had a right to search the room in which the rifle was found, because the warrant authorized the search of the entire premises for marijuana. And even if the warrant had not authorized the search of this room, the officers, under special circumstances, might have been justified in making a cursory survey of the entire premises in order to ensure their safety. See *United States v. Sellers*, 520 F.2d 1281 (4th Cir. 1975), judgment vacated on other grounds, 424 U.S. 961 (1976); *United States v. Blake*, 484 F.2d 50 (8th Cir. 1973), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3076, 41 L.Ed.2d 669 (1974); *United States v. Looney*, 481 F.2d 31 (5th Cir.), *cert. denied*, 414 U.S. 1070, 94 S.Ct. 581, 38 L.Ed.2d 476 (1973). But see *United States v. Carter*, 173 U.S.App.D.C. 54, 522 F.2d 666 (1975); *United States v. Gamble*, 473 F.2d 1274 (7th Cir. 1973) (both finding searches of premises illegal despite a claim that such a search was necessary to protect the officers' safety when they entered with only a warrant for an arrest). An object in plain view, but not mentioned in a warrant, may not be seized unless one of the narrow exceptions to the warrant requirement are met. For example, it may be seized if it is contraband, or is believed to be evidence of a crime, or presents an immediate threat to the safety of the officers. The legality of the seizure as a protective measure will depend on the circumstances of each case, and the officers are justified in taking only those measures that are reasonably necessary for their safety. Cf. *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

The record on appeal does not, however, provide enough information about the circumstances surrounding the seizure of the rifle to determine whether it was justified.

1. Appellee did not offer the safety precaution justification in its brief, and it was first asserted in response to questioning by the court at oral argument.

**1080**

There is some indication that the premises had already been secured and that all occupants of the house had been herded into two rooms where they were effectively under the control of the police officers.[2] If this is true, the second search which produced the rifle cannot be justified as a protective measure. See *United States v. Erwin*, 507 F.2d 937 (5th Cir. 1975). Furthermore, it is unlikely that bringing the rifle from the bedroom into the crowded room where appellant was being held and confronting him with it contributed to the safety of the police.

If the rifle had been illegally seized, defendant was entitled to a determination whether his remarks to the police when they showed it to him were the fruit of the impermissible seizure and therefore inadmissible at trial. I would remand to allow the district court to make these determinations.

2. The officer in charge of the execution of the warrant testified at the first suppression hearing as follows:

Q. You found a clip for the nine millimeter rifle?
A. Yes.
Q. Where did you find this clip?
A. In the basement.
Q. I'm sorry, when did you go to the basement?

A. After the premises were secured and everybody upstairs was put in the living room, I went downstairs to see what was going on, to find out what they found, if they found what they were looking for.
Q. Did you find the clip before or after you found the rifle in the southeast bedroom?
A. I found the clip first.
Q. Then you went back upstairs?
A. Yes.
(Emphasis added.)