**UNITED STATES of America,**

v.

**Salvatore Victor
LAFERRERA, Defendant.**

**No. 84–6070 CR-Paine.**

United States District Court,
S.D. Florida.

Oct. 25, 1984.

Deborah Watson, Dept. of Justice, Sp. Atty., Fort Lauderdale, Fla., for plaintiff.

Michael Querques, Orange, N.J., for defendant.

## ORDER

PAINE, District Judge.

This cause is before the Court on defendant's motion to suppress (DE 10). The Court held a hearing on defendant's motion on September 21, 1984 (DE 23) and received defendant's final brief in support of the motion on October 10, 1984 (DE 26). The government filed a number of memorandums in support of their position that the motion should be denied. (DE 18–22). Having reviewed the submissions of counsel and the transcript of the suppression hearing, this Court is of the view that the motion must be granted.

On August 26, 1983 local law enforcement officers and representatives from Jersey Central Power & Light (J.C.P & L) arrived at defendant's residence on Hulses Landing Road, Brick Town, New Jersey to conduct a search. The search party was armed with a search warrant to enter and search the premises for evidence relating to the theft of electricity. (*See* government exhibit S.H.1, 84–6070–Cr–Paine). During the course of the search weapons were found in the downstairs kitchen closet, up-

stairs master bedroom closet, a cabinet in the bedroom closet and inside a safe within the cabinet. (*See* Government exhibit S.H.1, 84–6070–Cr–Paine). The charges in the instant indictment stem from defendant's possession of these weapons.

After the first weapons were found, Lt. Gudgeon, the officer in charge of the search party, left the residence to confer with a local prosecutor. (DE 23 at 37–38). The result of this discussion was Lt. Gudgeon's knowledge that possession of the weapons by defendant *did not* constitute a violation of state law. (DE 23 at 38). Lt. Gudgeon returned to the residence where the search party was in the process of conducting the search and securing any further weapons. These weapons were removed from defendant's residence and secured outside until completion of the search. The weapons were then removed to the police station for checking. Detective Sullivan testified that the defendant had told him the guns had been legally purchased in Florida. (DE 23 at 139).

The government offers several arguments in support of its contention that the guns should not be suppressed. The Court agrees with the government's contention that it was permissible for the search party to locate and secure all weapons in the home for the safety of the search party. Upon discovery of weapons during the course of a search, it is permissible to secure those weapons, for the safety of those conducting the search, as well as any others present. *United States v. Malachesen*, 597 F.2d 1232 (8th Cir.1979); *United States v. Chapman*, 549 F.2d 1075 (6th Cir.1977).

These cases, however, do not stand for the proposition that the weapons may be seized indefinitely. The reason that a protective search and seizure, in and of itself, does not authorize retention of the weapons beyond the conclusion of the search is

that the purpose for the limited seizure has been effected. The purpose of seizing the weapons during the search is to secure the safety of the officers. Once the search is completed and the officers are on their way there is no longer a viable safety concern.

The government suggests that the officer's standard operating procedure of removing the items was justified because by leaving behind a "small arsenal" upon departure there still would have been a danger to the officers. The Court cannot agree with this logic. Under such a situation, where weapons were seized only for the protection of the officers, a transfer of the arsenal would have to transpire at some point in time. At the point of transfer the owner of the guns will inevitably wind up in possession of the arsenal in police presence.

Nor do the cases cited by the government support their argument the weapons secured for the protection of the search party may be retained beyond the duration of the search. *See* e.g. *United States v. Timpani*, 665 F.2d 1, 5–6, n. 8 (1st Cir. 1981) ("In a word, it might well have been dangerous to leave the weapons in the bedroom; and removing them to the car *while the search went on,* in our view, was reasonable".) (emphasis added). Therefore, something more than a concern for the safety of the officers must exist before the officers may remove weapons, secured during a protective search, from the search site.

This result can be gleaned not only from reference to general constitutional principles relating to search and seizure, but also reference to cases dealing with seizures made pursuant to the "plain view" exception.[1]

In *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) the Court stated that "seizure of property in plain view involves no invasion of privacy and is presumptively reasonable, *assum-*

---

1. The government also argues the seizure of 3 of the weapons named in the indictment [.22 caliber AR–15; a millimeter Baretta pistol and .22 caliber North American revolver] were found in "plain view" and therefore were properly seized.

The Court's finding that one of the essential elements necessary for a plain view seizure was missing requires rejection of this argument as well.

*ing that there is probable cause to associate the property with criminal activity."* *Id.* at 587, 100 S.Ct. at 1380 (emphasis added). In the Court's recent handling of *Texas v. Brown,* 460 U.S. 730, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) the plurality of the Court clarified the language in *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971) requiring the incriminating nature of the items seized to be "immediately apparent". The *Brown* plurality suggested this was an "unhappy choice of words", *Brown,* 460 at 741, 103 S.Ct. at 1542. This unhappiness was premised on the plurality's [2] interpretation that the "immediately apparent" requirement implies an "unduly high degree of certainty as to the incriminatory character of the evidence ...." *Id.* at 741, 103 S.Ct. at 1542. While a high degree of certainty might not be necessary, some standard of probable cause to believe a crime has been, or is about to be committed, must be present in order to avoid running afoul of the Fourth Amendment guarantees.

The case of *United States v. Gray,* 484 F.2d 352 (6th Cir.1973) *cert. den.* 414 U.S. 1158, 94 S.Ct. 916, 39 L.Ed.2d 110 (1974) is helpful in determining the issue before the Court. In *Gray* a state trooper was informed that the defendant was selling beer without a license. 484 F.2d at 353. The trooper entered defendant's store and purchased several cans of beer. *Id.* The trooper left the store and obtained a search warrant authorizing seizure of "any intoxicating liquors, apparatus for manufacturing intoxicating liquors or materials used in the manufacture of intoxicating liquors." *Id.*

Upon returning to the store to execute the search warrant, defendant was arrested. The store itself was searched, as was the upstairs residential apartment. Although nothing pertaining to alcoholic beverages was found upstairs, two rifles in the upstairs clothing closet were discovered. *Id.*

The officer removed the rifles from the closet and took them downstairs to the store area of building where he copied down the serial numbers of the weapons Trooper Brodt then returned the weapons to the upstairs closet.... The officers then ran the serial numbers obtained from the rifles through the computer of the National Crime Information Center and learned for the first time that the firearms had been stolen....

*Id.* at 353–54.

The *Gray* court suppressed the guns finding that "there was no nexus between the rifles and the crimes of selling or possessing intoxicating liquor without a license; nor did the officers at that time have any knowledge that the rifles were evidence of any other crimes." *Id.* at 355. *See also Sovereign News Co. v. United States,* 690 F.2d 569 (6th Cir.1983); *United States v. Szymkowiak,* 727 F.2d 95 (6th Cir.1984); *United States v. Clark,* 531 F.2d 928 (8th Cir.1976); *United States v. Schire,* 586 F.2d 15 (7th Cir.1978).

█ In this case we have a situation, in terms of probable cause, where the search party had affirmative knowledge that no violation of state law was occasioned by defendant's possession of the weapons. (*See* DE 23 at 38). The government argues that this knowledge makes no difference. In essence the assertion made is that since the test is objective, rather than subjective, the seizure was valid. This argument is without merit. It is true that a seizing officer's subjective conclusion that he did not have probable cause will not necessitate suppression if an objective view of the facts allow a finding of probable cause. *United States v. Thompson,* 712 F.2d 1356 (11th Cir.1983). It is quite another thing to suggest that where an officer *knows* at the time of the seizure that no violation of state law has occurred that there could possibly be a finding of probable cause on that score. Such a hold-

---

**2.** Justice Rehnquist authored the plurality opinion in which Chief Justice Burger, Justice White and Justice O'Connor joined. Justice Powell filed a concurring opinion, in which Justice Blackmun joined. Justice Stevens filed another concurring opinion in which Justice Brennan and Justice Marshall joined. None of these opinions can be read as obviating the need for probable cause.

ing would sanction bad faith seizures and is repugnant to the rights secured by the United States Constitution, and any sense of fairness.

The government also argues that defendant's statement acknowledging purchasing the guns in Florida constitutes probable cause to believe a violation of federal firearms law exists. While probable cause is not a strict, exacting standard, this Court is of the view that the mere statement of purchasing the guns in Florida does not rise to the level of probable cause to believe a violation of 18 U.S.C. § 922(a)(3) or 18 U.S.C. § 922(a)(6) existed.

Section 922(a)(3) prohibits the transportation of firearms into a person's state of residence from a place outside thereof, if the person is not a federally licensed importer, manufacturer or collector of firearms. To extract from defendant's statement a finding of probable cause of unauthorized interstate transportation of firearms requires a quantum leap. Nor does the fact that the items were purchased in Florida rise to the level of probable cause to believe the defendant misrepresented his residence when purchasing the weapons in violation of 18 U.S.C. § 922(a)(6).

In light of the foregoing it is

ORDERED and ADJUDGED that the defendant's motion to suppress is granted.