NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0022n.06

No. 20-3151

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jan 11, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO |
| | ) | |
| JESSIE CANTIE, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Before: COOK, GRIFFIN, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Jessie Cantie pleaded guilty to being a felon in possession of a firearm and ammunition. He challenges the denial of his motion to suppress the loaded firearm that was discovered under the seat of an illegally parked minivan in which he was a passenger as well as statements that he made to the police. For the reasons set forth below, we AFFIRM.

I.

In the early morning hours of March 14, 2019, Cleveland Police Officer Samuel Pelsnik and his partner were on patrol in a high-crime area of the city. While driving their marked police car, they noticed several vehicles illegally parked on the street near a bar called the Alibi Inn. One of those vehicles was a Chrysler minivan with two occupants. Rather than issue a citation, Pelsnik and his partner decided to approach the minivan, speak to the occupants, and ask them to move. The officers parked behind the minivan without activating the lights or sirens. The officers then

approached the vehicle—Pelsnik's partner on the driver's side and Pelsnik on the passenger side where Jessie Cantie was sitting. Pelsnik's body camera recorded the interaction.

As Pelsnik approached, Cantie voluntarily opened his door. Cantie stated that he had been drinking. While standing on the sidewalk next to the vehicle and using his flashlight, Pelsnik observed two open bottles of alcohol in the back seat and asked Cantie to exit the vehicle. Cantie complied, stepping out onto the sidewalk. As Cantie stepped out, Pelsnik observed the handle of a firearm and a portion of the barrel about halfway under the passenger seat. With Cantie's permission, Pelsnik patted him down to check for weapons but did not discover any. Pelsnik then used his flashlight to illuminate the passenger side of the vehicle, asking Cantie if there was anything in the van that he should know about. Cantie told him there wasn't. Pelsnik then leaned in through the open door and retrieved a firearm from under the passenger seat. He asked if it belonged to Cantie; Cantie admitted that it was his. Pelsnik placed Cantie in handcuffs and another officer escorted him to the back of a patrol car so Pelsnik could identify the firearm and determine whether it was registered.

Pelsnik and his partner then conducted a more detailed search of the vehicle. They discovered a bookbag in the back seat, which contained two glass jars of marijuana, two digital scales, and an open bottle of Promethazine. The officers also discovered a duffle bag containing a loaded AR-15 rifle. Pelsnik placed Cantie under arrest and read him his *Miranda* rights before inquiring about the contraband and firearms found in the vehicle.

Cantie was charged with one count of illegal possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). He filed a motion to suppress, arguing that evidence obtained from the search of the vehicle and any evidence obtained from his unlawful seizure, including his

custodial statements, should be suppressed. The district court held a suppression hearing and ultimately denied Cantie's motion.

The government filed a superseding indictment, charging Cantie with being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He pleaded guilty pursuant to a written plea agreement. As part of his plea agreement, he preserved the right to appeal the denial of his suppression motion.

Cantie was sentenced to 66 months' imprisonment followed by 3 years of supervised release. He timely filed a notice of appeal, challenging the district court's denial of his motion to suppress.

II.

We use a mixed standard of review when examining a district court's decision on a motion to suppress, reviewing findings of fact for clear error and conclusions of law de novo. *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008). We review the evidence "in the light most likely to support the district court's decision." *Id.* (citation omitted).

A.

The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. The Amendment requires that traffic stops be reasonable, *see Whren v. United States*, 517 U.S. 806, 809–10 (1996), and that searches generally be conducted "pursuant to a warrant issued upon probable cause," *Liberty Coins, LLC v. Goodman*, 880 F.3d 274, 280 (6th Cir. 2018).

Here, the stop was reasonable in all respects. Cantie concedes that Pelsnik behaved lawfully when he approached the minivan and engaged Cantie in conversation, given that the vehicle was illegally parked. *See United States v. Copeland*, 321 F.3d 582, 594 (6th Cir. 2003)

("[A]n officer may effect a stop of a vehicle for parking illegally."). Cantie also concedes that "[t]he open containers violate[d] the laws of the City of Cleveland." *See* Cleveland City Ordinance 617.07. Thus, Pelsnik not only had a lawful reason for approaching the minivan and engaging with its occupants, but he also had a lawful reason to continue the investigatory stop and to order Cantie to exit the vehicle.[1] *See Maryland v. Wilson*, 519 U.S. 408, 415 (1997) ("[A]n officer making a traffic stop may order passengers to get out of the car pending completion of the stop.").

Cantie's primary focus on appeal is on what happened once Pelsnik ordered him out of the minivan. In Cantie's eyes, a lawful stop turned into an unlawful search the moment Pelsnik "positioned himself inside the [passenger-side] door so that he could visually search the vehicle." But Cantie has no standing to make this claim. As the passenger of the vehicle, Cantie may challenge the lawfulness of an investigatory stop and subsequent detention, but he has no legitimate expectation of privacy in the vehicle and no standing to challenge a search of it. *See Rakas v. Illinois*, 439 U.S. 128, 148–49 (1978); *see also United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007). The government makes this argument on appeal, and Cantie offers no response.

In any event, the search and the seizure of the firearm were justified. Under the plain-view exception to the warrant requirement, an officer may seize an object without a warrant "provided that (1) the officer is lawfully positioned in a place from which the object can be plainly viewed; (2) the incriminating character of the object is immediately apparent; and, (3) the officer has a lawful right of access to the object itself." *United States v. Bishop*, 338 F.3d 623, 626 (6th Cir.

---

[1] Cantie hints that the *duration* of the investigatory stop made it unlawful. But he neither presented this argument to the district court nor develops this argument on appeal. As a result, he has abandoned this argument. *See United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016); *see also Kreipke v. Wayne State Univ.*, 807 F.3d 768, 781 (6th Cir. 2015). We note, however, that fewer than two minutes passed between when Pelsnik exited the patrol car and when he seized the firearm from underneath the minivan's passenger seat.

2003). When Cantie opened the passenger door and stepped out of the vehicle, Pelsnik saw a portion of the firearm under the passenger seat.Pelsnik was in a lawful observation spot at this point. He was outside the vehicle, on a public sidewalk, using his flashlight to illuminate the passenger side of the minivan as Cantie opened the door to exit. The fact that Pelsnik, while outside the vehicle, may have "changed his position" and "angle so he could see what was inside" the vehicle "is irrelevant to Fourth Amendment analysis." *Texas v. Brown*, 460 U.S. 730, 740 (1983) (alterations omitted) (citation omitted). The same is true for Pelsnik's use of a flashlight to illuminate the interior of the vehicle. *Id.* at 739–40. "There is no legitimate expectation of privacy shielding that portion of the interior of an automobile which may be viewed from outside the vehicle by either inquisitive passersby or diligent police officers." *Id.* at 740 (internal citations omitted).

Next, when Pelsnik observed the handle of the firearm sticking out from under the passenger seat, its incriminating character was immediately apparent. In Ohio, it is a crime to carry a loaded firearm in a vehicle where a passenger can access it without having to leave the vehicle. *See* Ohio Revised Code (ORC) § 2923.16(B). Furthermore, Cantie stated that he had been drinking that evening, and Pelsnik observed that the firearm was within Cantie's reach. In Ohio, it is also a crime to carry a firearm while intoxicated. *See* ORC § 2923.15. While Ohio law permits individuals to obtain a license to carry a concealed handgun, a permit holder who is stopped by law enforcement must promptly notify the officers that he has a permit and is carrying a weapon. *See* ORC § 2923.12(B)(1). Cantie did neither, and there is no evidence that he had a concealed carry permit in any event.

The final requirement—that the officer have a lawful right of access to the object—"is meant to guard against warrantless entry onto premises whenever contraband is viewed from off

the premises in the absence of exigent circumstances, but does not bar the seizure of evidence in a parked car." *Boone v. Spurgess*, 385 F.3d 923, 928 (6th Cir. 2004) (internal citation omitted). The seizure of the firearm was lawful.

B.

Cantie next argues that the district court erred when it failed to suppress the statements he made to Pelsnik regarding ownership of the firearm. "When reviewing the denial of a motion to suppress a statement allegedly taken in violation of a defendant's *Miranda* rights, we review the district court's factual findings for clear error and its legal conclusions de novo." *United States v. Lawrence*, 735 F.3d 385, 436 (6th Cir. 2013).

Law enforcement officers must advise individuals of certain rights, including their right to remain silent, before conducting a custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436, 444 (1966). If no custodial interrogation exists, "the requirement to recite the *Miranda* warnings is not triggered and the analysis is at an end." *United States v. Woods*, 711 F.3d 737, 740 (6th Cir. 2013).

"In determining whether a person is 'in custody' for purposes of *Miranda*, courts look to 'the objective circumstances of the interrogation to determine how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her freedom of action.'" *United States v. Luck*, 852 F.3d 615, 621 (6th Cir. 2017) (alterations adopted) (quoting *United States v. Panak*, 552 F.3d 462, 465 (6th Cir. 2009)). "The ultimate inquiry is whether, under the totality of the circumstances, the interviewee's freedom of movement was restrained to a degree associated with formal arrest." *Id.* Courts consider several factors when making this determination, including where the questioning took place, the length and manner of the questioning, whether there was any restraint on the individual's freedom to move, and whether the

individual was told that he needed to answer the questions. *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010).

Within minutes of initiating contact with Cantie and performing a consensual pat-down search, Pelsnik asked if there was anything in the car that he should know about. Cantie said no. After peering into the minivan through the open door, Pelsnik asked, "What about this handgun under the passenger seat, man?" "Is it yours?" Cantie responded, "It's mine." Pelsnik then told Cantie that he was "going to place [him] in cuffs for right now." Cantie voluntarily held out his wrists and said, "Go ahead and cuff me." As Pelsnik was placing handcuffs on Cantie, he said, "We will figure out what the deal is with [the firearm]." Pelsnik then asked whether the vehicle belonged to Cantie's girlfriend. Cantie said it did. Pelsnik asked, "She's got a CCW, right?" Cantie responded, "Yep." Cantie was then escorted to the back of a police car.

We have little trouble concluding that Cantie was not in custody when he was asked about and admitted ownership of the firearm. Cantie concedes that "the encounter was not a full-blown arrest. Instead, it was more akin to an investigatory detention" under *Terry v. Ohio*, 392 U.S. 1 (1968). Appellant Br. at 13–14. It was also akin to a traffic stop. The Supreme Court has held that "the temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute *Miranda* custody." *Maryland v. Shatzer*, 559 U.S. 98, 113 (2010) (internal citation omitted).

A review of the facts confirms what Supreme Court caselaw already tells us—Cantie was not in custody when asked about the firearm. Pelsnik's entire line of questioning lasted approximately one minute. Pelsnik asked the questions about the firearm—whether there was anything in the minivan that Pelsnik should be aware of and what about the firearm under the seat—before Cantie was placed in handcuffs. When Pelsnik asked those questions, Cantie was

standing on a public sidewalk.  His movement was not restrained.  Pelsnik's questioning was not hostile or coercive.  He did not tell Cantie that Cantie had to respond to his questions or that he was not free to leave.  Pelsnik did not have his weapon drawn and did not have his hands on Cantie.  Accordingly, a reasonable person in Cantie's shoes would not have felt as if he were in custody when he was asked about the firearm and whether it belonged to him.  Although Cantie was eventually arrested and placed in custody for purposes of *Miranda*, Pelsnik read Cantie his rights before asking about the contraband and firearms discovered in the search of the vehicle.  Even after Cantie was read his rights, he admitted that the firearm under the passenger seat was his.  Therefore, we find that the district court did not err when it denied Cantie's motion to suppress his statements.

* * *

We AFFIRM the district court's judgment.