**UNITED STATES of America,**
**Appellant,**

v.

**John Charles MALACHESEN, Appellee.**

**No. 79–1027.**

United States Court of Appeals,
Eighth Circuit.

Submitted April 24, 1979.

Decided May 29, 1979.

Rehearing and Rehearing Ea Banc
Denied July 25, 1979.

dence," the evidence here satisfied that standard.

James A. Morrow, Asst. U. S. Atty., Minneapolis, Minn. (argued), for appellant; Andrew W. Danielson, U. S. Atty., and William M. Orth, Legal Intern, Minneapolis, Minn., on brief.

Carol M. Grant of Meshbesher, Singer & Spence, Minneapolis, Minn., for appellee.

Before LAY, BRIGHT and ROSS, Circuit Judges.

BRIGHT, Circuit Judge.

This interlocutory appeal by the Government, from an order of the district court suppressing the introduction into evidence of a handgun in the prosecution of John Charles Malachesen, presents the following issue: During the course of an otherwise lawful search, may the police constitutionally seize a cocked and loaded handgun for safety considerations? The Government indicted Malachesen, a convicted felon, for knowingly and intentionally receiving a firearm which had been transported in interstate commerce, in violation of 18 U.S.C. § 922(h) (1976). Following a hearing, the United States Magistrate recommended that Malachesen's motion to suppress the firearm be denied. On *de novo* review, the district court disagreed with the magistrate and granted the motion to suppress. This appeal followed.

Upon examination of the record, we hold that the officers properly seized the firearm in question, and we reverse the suppression order of the district court.

On December 29, 1977, a Minnesota state judge issued a warrant to state police officers authorizing a search of the home of John Charles Malachesen and adjacent property for a 1973 Polaris snowmobile and Colombian marijuana. During the course of the search, Officer James Moeller discovered a cocked and apparently loaded .22 caliber revolver beneath the mattress of a bed and noticed a bullethole in the bedroom wall near the bed. Officer Moeller picked up the weapon, uncocked the hammer, and unloaded it.[1] He then turned the pistol over to the inventory officer on the premises. Although Malachesen was not at home during the search, his roommate was present.

While the the search for the marijuana continued, with the firearm in the possession of the inventory officer, Officer Moeller learned from two detectives, also searching the premises, that Malachesen had a prior felony conviction.

---

1. Officer Moeller testified that safety considerations motivated the seizure of the gun. Moreover, he stated that standard police procedure directed officers to secure firearms discovered in the course of a search.

When Malachesen returned home, he admitted under Moeller's questioning, ownership of the weapon and his prior felony conviction. This information and the seized handgun served as the foundation for the present indictment against Malachesen for violation of 18 U.S.C. § 922(h).

In granting the motion to suppress, the district court stressed that officer Moeller seized the handgun before he knew that Malachesen had a prior conviction and owned the weapon. The court relied on *United States v. Clark*, 531 F.2d 928 (8th Cir. 1976), a case in which this court affirmed the suppression of a handgun. In *Clark*, pursuant to a warrant designed to locate controlled substances, the police searched petitioner Clark's home and adjacent repair shop. During the search, an officer asked Clark whether he had any guns. Clark reported that he possessed several loaded firearms and told the officers where the guns could be found. As the district court particularly noted in its opinion, "[t]he officers [without Clark's knowledge] copied down the serial number on the gun and traced it to a firearms dealer in another state and a second search warrant was then issued for the gun."

The investigating officers in *Clark* lacked reasonable cause to believe that the handgun was contraband, that it evidenced any crime, or that it was within the scope of the search warrant. Therefore, the seizure of the weapon in *Clark* was not justified under the plain view exception to the warrant requirement, for the "incriminating nature" of the gun was not immediately apparent. *See Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).

The district court reasoned that here, as in *Clark*, the handgun's "incriminating nature" was not immediately apparent to the

investigating officers. Because the weapon did not appear to be related in any way to the authorized object of the search, *i. e.*, marijuana, the court held that the search and seizure of the gun could not be justified as a plain view exception to the warrant requirement and violated Malachesen's fourth amendment rights.

The court also determined that the officers lacked reasonable cause to fear for their physical safety and therefore rejected the Government's attempt to justify the search and seizure of the weapon for reasons of safety.

In our view, *United States v. Clark, supra*, does not apply to this case. In *Clark*, the extensive exploratory search exceeded the scope of the warrant authorizing a search for controlled substances.[2] Unlike the events in *Clark*, the officers in the instant case accidentally discovered the handgun in the course of their authorized search for marijuana and a snowmobile. When he found the gun, Officer Moeller uncocked and unloaded it, pursuant to local standard police procedure, and delivered the weapon to the inventory officer.[3] *Clark* does not address this type of temporary seizure, for limited safety purposes, of a loaded and cocked handgun discovered in the course of executing a search warrant.

Although the incriminating nature of the handgun may not have been immediately apparent to the investigating officers, its temporary seizure, unloading, and retention by a responsible officer (here the inventory officer) seems a reasonable precaution to assure the safety of all persons on the premises during the search. *See United States v. Chapman*, 549 F.2d 1075 (6th Cir. 1977). A loaded, cocked handgun poses a threat to anyone within its range of fire.[4] Moreover, temporary seizure undercuts the

---

**2.** The investigating officers examined and recorded the serial numbers of hand tools, motorcycles, firearms, a television, stereo equipment, and other shop equipment and personal effects observed in the course of searching Clark's premises. *United States v. Clark*, 531 F.2d 928, 931 (8th Cir. 1976).

**3.** Although he did not challenge the search leading to the discovery of the handgun as illegal, Malachesen characterizes the investi-

gating officers' temporary possession of the weapon as an unlawful seizure.

**4.** *Coolidge v. New Hampshire, supra*, 403 U.S. 443, 472, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), appears to suggest that the plain view exception to the warrant requirement may permit the seizure of "objects dangerous in themselves." We believe that a cocked and loaded gun should be considered dangerous in itself.

chance of mishap—the accidental discharge of the handgun through mishandling by someone on the premises,[5] or even its intentional use by Malachesen's roommate or a cohort. Common sense dictates that the weapon should be unloaded and, at least temporarily, kept in a safe place.

When the officers learned that Malachesen had a prior conviction, the temporarily-seized handgun became contraband and subject to seizure as an illegal weapon possessed by a felon.

Accordingly, we find no violation of Malachesen's fourth amendment rights. We reverse the order of the district court suppressing the introduction into evidence of the handgun, and we remand this case for further proceedings.

---

**5.** The bullethole in the wall near the discovered gun suggests that the weapon may have been accidentally fired on a previous occasion.