*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0264P (6th Cir.)
File Name: 03a0264p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
  *Plaintiff-Appellant,*

  *v.*                                No. 02-5176

WESLEY DALE BISHOP,
  *Defendant-Appellee.*

———————————

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 01-00008—Thomas G. Hull, District Judge.

Argued: June 19, 2003

Decided and Filed: August 1, 2003

Before: KENNEDY and COLE, Circuit Judges;
WILLIAMS, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Guy W. Blackwell, ASSISTANT UNITED STATES ATTORNEY, Greenville, Tennessee, for Appellant.

———————————

[*] The Honorable Glen M. Williams, United States District Judge for the Western District of Virginia, sitting by designation.

Nikki C. Pierce, FEDERAL DEFENDER SERVICES, Greeneville, Tennessee, for Appellee. **ON BRIEF:** Guy W. Blackwell, ASSISTANT UNITED STATES ATTORNEY, Greenville, Tennessee, for Appellant. Nikki C. Pierce, FEDERAL DEFENDER SERVICES, Greeneville, Tennessee, for Appellee.

———————————

## OPINION

———————————

KENNEDY, Circuit Judge. United States of America appeals the district court's grant of Wesley Bishop's motion to suppress a handgun seized by a deputy sheriff from an unattended automobile parked on private property. The gun provides the basis for a felon in possession charge. We **REVERSE** the decision of the district court for the following reasons.

### I.

On August 22, 1999, at almost half past noon, Laverne Julian, a deputy county sheriff, went to a residence in a rural part of Carter County, Tennessee, to serve an arrest warrant on Tony Arnold for misdemeanor theft under $500. At the time, Tony Arnold resided at the home of Regina Arnold, his girlfriend.

When Deputy Julian arrived at the residence, he pulled into a narrow one-lane driveway and parked behind another vehicle. The vehicle was occupied by a man sitting in the driver's seat. The car engine was not running. Deputy Julian, who was in uniform, approached the driver's side of the vehicle, which was flanked by a dense woods. Speaking through the open window, Deputy Julian asked the man if he knew Tony Arnold and, after the man said yes, Julian asked if he had seen Tony Arnold or knew of his whereabouts, to which the man said no. Deputy Julian then asked the man

why he was there, and he responded that he was meeting "a boy from up the road."

Deputy Julian proceeded to walk to the rear of the house and knocked on the back door. Regina Arnold answered the door and Deputy Julian asked if Tony Arnold was present. Regina Arnold said no. At this point, the parties dispute whether Regina Arnold told Deputy Julian that the man sitting in the driveway was Wesley Bishop or whether Julian knew the man's identity. Either way, from earlier discussions with other officers in the county sheriff's department, Deputy Julian connected Bishop's name with a reputation for violent criminal behavior. The deputy, however, did not know that Bishop was a convicted felon.

After conversing with Regina Arnold for approximately thirty seconds, Deputy Julian proceeded back toward the driveway and noticed that Bishop was gone. Deputy Julian had not heard the car door open or close. Deputy Julian peered into the car through the open driver's side window to see if Bishop was still inside it. He observed that the keys were in the ignition and that the barrel of a handgun was poking from beneath a cushion on the driver's seat. Deputy Julian reached through the open window and removed the handgun, which he found to be loaded.

Deputy Julian went to his squad car and called his dispatcher, requesting information based on the vehicle's license plate and identification numbers. The deputy also asked the dispatcher to determine if there were any outstanding warrants for Bishop. He was given the vehicle information and told that there was an outstanding arrest warrant for Bishop based on his failure to appear on a state charge of driving on a revoked driver's license. Deputy Julian then arranged to have the vehicle towed to the sheriff's impound lot. Bishop did not return to the scene before Deputy Julian left.

## II.

When reviewing a district court's decision on a motion to suppress evidence, the court's legal conclusions are reviewed *de novo* and its factual findings are upheld unless clearly erroneous. *United States v. Lewis*, 231 F.3d 238, 241 (6th Cir. 2000). The district court granted Bishop's motion to suppress the handgun, concluding that the exigent circumstances exception to the Fourth Amendment warrant requirement (specifically, the plain view exception) did not apply because Deputy Julian lacked a basis for assuming that the handgun was contraband.

The Fourth Amendment prohibits unreasonable searches and seizures. *Maryland v. Buie*, 494 U.S. 325, 331 (1990). In delineating the contours of the Fourth Amendment's warrant and probable cause requirements for searches and seizures, the Supreme Court has recognized several exceptions that acknowledge the need for police officers to protect themselves and the public from violence in circumstances where it would not be practical to require the officer to secure a warrant and where probable cause may be lacking. *E.g.*, *Buie*, 494 U.S. at 334 (incident to an in-home arrest, a police officer may look beyond "closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched" if "there [are] articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing the area to be swept harbors an individual posing a danger to those on the arrest scene"); *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983) (in context of a roadside stop, "the search of the passenger compartment of an automobile, limited to those areas in which a weapon may be placed or hidden, is permissible if the police officer possesses a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant' the officer in believing that the suspect is dangerous and that the suspect may gain immediate control of weapons"); *Cady v.*

*Dombroski*, 413 U.S. 433, 447-48 (1973) (automobile search incident to police community caretaking function is permissible when police reasonably believe vehicle trunk, which is vulnerable to intrusion by vandals, contains a gun); *Chimel v. California*, 395 U.S. 752, 763 (1969) (incident to an in-home arrest, it is reasonable for a police officer to search concealed spaces within the arrestee's reach and seize any weapons or evidence); *Terry v. Ohio*, 392 U.S. 1, 27 (1968) (in context of investigatory stop, a limited patdown search for weapons is permissible if a police officer reasonably believes "that [the officer] is dealing with an armed and dangerous individual"). As this Court has noted: "Obviously, the Constitution does not limit the government officers' rights to protect themselves from assault when their fear is reasonably based on objective facts." *United States v. Kinney,* 638 F.2d 941, 944 n.2 (6th Cir. 1981).

Under ordinary circumstances, the plain view exception permits the warrantless seizure of an object provided that (1) the officer is lawfully positioned in a place from which the object can be plainly viewed; (2) the incriminating character of the object is immediately apparent; and, (3) the officer has a lawful right of access to the object itself. *Horton v. California*, 496 U.S. 128, 136-37 (1990); *see also Texas v. Brown*, 460 U.S. 730, 741-42 (holding that, "in the ordinary case," "'[t]he seizure of property in plain view . . . is presumptively reasonable, assuming there is probable cause to associate the property with criminal activity.'"). The Supreme Court also has indicated that the plain view exception permits the warrantless seizure of "objects dangerous in themselves." *Coolidge v. New Hampshire*, 403 U.S. 443, 472 (1971) (plurality); *see also United States v. Malachesen*, 597 F.2d 1232, 1234 n.4 (8th Cir. 1979) (observing same).

The Sixth Circuit has twice approved of police seizure of a weapon that was not obvious contraband based on an officer's reasonable belief that the weapon posed a threat to officer safety. *United States v. Chapman* interpreted *Terry* as

permitting a police officer executing a search warrant to temporarily seize a weapon that was in plain view but not obvious contraband provided the seizure was justified by a legitimate concern for police safety. 549 F.2d 1075, 1079 (6th Cir. 1977). In *Chapman*, the police secured and executed a search warrant for marijuana possession at a specific residence in Detroit. When police conducted the search, at least ten people were present in the house. In conducting the search, police discovered a loaded sawed-off shotgun under a couch and a rifle in plain view in an upstairs bedroom. The defendant claimed that under *United States v. Gray*, 484 F.2d 352 (6th Cir. 1973), the police had illegally seized the weapons because at the time of the seizure the police did not have any knowledge that the weapons were contraband. *Id.* at 1078. With respect to the sawed-off shotgun, the court concluded that the defendant could not challenge the seizure of that weapon because it was obvious contraband. With respect to the rifle, the court found that police possession of the rifle was not an unreasonable seizure because (1) the police officer was lawfully positioned when he found the rifle; and (2) there was a legitimate concern for police safety in that the defendant was not alone in the house at the time of the raid and the police were conducting a "raid on a portion of the Detroit drug scene." *Id.* at 1078-79.

*United States v. Isham*, 501 F.3d 989, 991 (6th Cir. 1974), similarly interpreted *Terry* as permitting police officers to seize a weapon that was not obvious contraband on the officers' reasonable belief that the seizure was necessary to protect the officers' safety. In *Isham*, police officers took a shoplifting suspect, whose hands were cuffed in front of him, to his car so that he could secure the car before he was taken to jail. As the suspect started to get into the vehicle, one of the officers saw a box of ammunition on the front seat and asked the suspect if he had a weapon that fit the ammunition. The suspect said that he did and that the weapon was in the back seat. The officers then entered the car and discovered a rifle under some other items in the back seat. The court concluded that "police knowledge of the existence of a

firearm was triggered by their plain view of the box of ammunition and subsequent inquiry," and hence within the rule established by *Coolidge*. *Id.* at 990. The court then held that "[w]hen the officers learned that there was a gun in the car, they had reasonable grounds to seize it for their own self-protection within the *Terry* rationale. *Id.* at 990-91. In the alternative, the court held that the seizure was valid under *Cady* because the police were acting in a community caretaker function when the gun was discovered. *Id.* at 991.

In *United States v. Malachesen*, 597 F.2d 1232, 1234 (8th Cir. 1979), the Eighth Circuit interpreted *Coolidge* as permitting a police officer to seize a weapon that was not obvious contraband based on the officer's reasonable belief that the weapon posed a safety threat. In that case, police officers executed a search warrant for marijuana and a snowmobile at the defendant's home and adjacent property. During the search, a police officer discovered a cocked and loaded handgun under a mattress and noticed a bullet hole in the bedroom wall near the bed. The gun was placed in the possession of the inventory officer for the duration of the search. The defendant was not present during the search, but his roommate was. Before the search was completed, the officer who found the gun learned that the defendant had a felony record. When the defendant returned home, he admitted to ownership of the gun and his prior felony conviction. The *Malachesen* court concluded that, even though the incriminating nature of the handgun was not immediately apparent to the police, their temporary seizure of the gun was a reasonable precaution to assure the safety of all persons on the premises during the search. *Id.* The court also held that the temporarily seized handgun became contraband and subject to seizure when the officers learned of the defendant's prior felony conviction. *Id.* at 1235.

The parties do not dispute that Deputy Julian was lawfully positioned when the gun came into plain view. Thus, for the seizure of a gun in plain view (and which is not obvious contraband) to be reasonable under the Fourth Amendment,

a police officer must reasonably believe, based on specific and articulable facts, that the weapon posed an immediate danger to officer or public safety. Deputy Julian had come to the property to serve an arrest warrant on Tony Arnold. Julian testified that he connected Bishop's name with a person known for violent criminal behavior, and that Bishop had disappeared from the car into a heavily wooded area without making a sound in the thirty seconds that Bishop was out of the deputy's sight. Julian also testified that, upon discovering the handgun, he immediately became concerned for his safety.

Deputy Julian's concern for his safety was objectively reasonable: Julian had reason to assume that Bishop was a friend of Tony Arnold's, the man he had come to arrest. Julian could have reasonably inferred that Bishop, as Arnold's friend and a man with a reputation for violence, posed a confrontation risk. The presence of the handgun heightened the risk of violence in connection with a possible confrontation. Deputy Julian, who was surprised by Bishop's sudden and stealthy disappearance and had no clue as to Bishop's immediate whereabouts, was alone in a heavily wooded and sparsely populated area. The circumstances and surroundings heightened Deputy Julian's vulnerability to attack.

Deputy Julian also could reasonably believe that the unattended gun posed a threat to public safety. The gun was left partially exposed in an unlocked and unattended car in a rural residential area. The gun could have been taken undetected by any passer-by, including a curious child. Deputy Julian's decision to seize the gun to prevent it from passing into the hands of someone other than the owner and possibly being used against another person was reasonable in light of the risk that unattended guns pose to public safety.

We find that the gun became contraband and subject to seizure when Deputy Julian discovered that it was loaded. Tennessee law permits the transportation of a handgun in a

vehicle provided that is unloaded, not concealed on or about the person possessing or carrying it, and the ammunition for the weapon is not in the immediate vicinity of the person or weapon. Tenn. Code Ann. § 39-17-1308(a)(1). The district court held that Deputy Julian had no reason to assume that the handgun indicated criminal activity because the handgun could have been lawfully possessed at the time under Tennessee's handgun permit law. We disagree. Tennessee law entitles a handgun carry permit holder to carry a loaded handgun *on his or her person* provided that the handgun is legally owned or possessed by the permit holder and the permit holder has the permit in the holder's immediate possession at all times when carrying the handgun. *Id.* § 39-17-1351(n). A reasonable officer could believe that Tennessee law is violated if a handgun permit holder leaves a loaded handgun unattended in a vehicle.

## III.

In sum, we hold that a police officer who discovers a weapon in plain view may at least temporarily seize that weapon if a reasonable officer would believe, based on specific and articulable facts, that the weapon poses an immediate threat to officer or public safety. We find that Deputy Julian's seizure of the handgun was reasonable in light of the totality of circumstances. Finally, because the transportation of a loaded handgun is illegal in Tennessee, we hold that the gun became contraband and subject to permanent seizure. Consequently, we **REVERSE** the decision of the district court to suppress the handgun as evidence.