NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 10a0764n.06

No. 09-3996

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Dec 15, 2010**

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| ANTHONY DIXON, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:  KENNEDY, COLE, and ROGERS, Circuit Judges.

**CORNELIA G. KENNEDY, Circuit Judge.**  Defendant Anthony Dixon was a passenger in a car driven with only one working headlight.  After Officer Joshua Frisby of the Dayton Police Department stopped the car for this violation and removed Dixon from the vehicle, he observed a part of Glock's handgun in the car under a floor mat and arrested Dixon.  Dixon sought to suppress the Glock, but the district court held that the handgun was in plain view of the arresting officer and was properly seized.  Dixon pleaded guilty to one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g), preserving his right to appeal the denial of his motion to suppress the search.  On appeal, Dixon argues that his detention by Officer Frisby was inappropriately prolonged beyond the scope of the traffic stop by an improper pat search in violation of his Fourth Amendment rights, that the Glock was only observed because of this pat search, and that it should have therefore been suppressed as fruit of the poisonous tree.  For the reasons that follow, we AFFIRM.

**FACTUAL AND PROCEDURAL BACKGROUND**

At about 6:45 p.m. on November 16, 2008, Officer Frisby was on routine patrol traveling westbound when he observed an automobile being driven eastbound with only one headlight illuminated. This is a traffic violation in Ohio. *See* Ohio Revised Code § 4513.04(A). Officer Frisby responded by turning around to initiate a traffic stop. Officer Frisby observed two occupants in the vehicle, the driver, Letitia Rose, and, seated in the front passenger seat, defendant Dixon. Officer Frisby approached the vehicle on the driver's side, identified himself, explained to Rose why he had stopped the vehicle, and asked her for identification and proof of insurance. Officer Frisby also requested identification from Dixon.

Officer Frisby testified that he then returned to his cruiser to issue a citation and upon entering his cruiser, inputted the information he had obtained from Rose and Dixon into the computer in his cruiser, which provided their criminal histories and Bureau of Motor Vehicle records. According to Officer Frisby, the computer reported that Dixon had recently been arrested several times for carrying concealed weapons and trafficking in drugs. Officer Frisby testified that this information made him uncomfortable, but that he did not call for backup because his cruiser computer indicated that all of his colleagues were already occupied at other locations. While he was in the cruiser obtaining the information regarding Rose and Dixon, Officer Dixon testified to witnessing "a lot of movements" within the car, though he did not mention these movements in his police report.

Officer Frisby returned to the vehicle and approached Dixon on the passenger's side of the vehicle. Officer Frisby testified that he asked Dixon to step out of the car so that he could talk to him. Dixon complied, leaving the passenger door open. Officer Frisby asked Dixon to put his hands

2

on the vehicle and began a pat search of Dixon to ensure that he did not have a weapon on his person. While Officer Frisby was pat searching Dixon, he saw a pistol protruding from under the floor mat on the passenger's side of the vehicle. Officer Frisby testified that approximately one-quarter of the butt of the pistol and its slide rail could be seen sticking out from under the floor mat and that he was able to recognize the gun as a Glock because that is the model of firearm that he had previously carried throughout his five years as a police officer. Officer Frisby did not manipulate the floor mat or move anything to see the Glock. Officer Frisby then placed Dixon in handcuffs and retrieved the handgun from the automobile.

On November 25, 2008, Dixon was indicted in the Southern District of Ohio on one count of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). Dixon filed a motion to suppress the handgun. The district court held an evidentiary hearing on the motion and subsequently denied it. Dixon entered a plea of guilty, preserving his right to appeal the district court's decision denying his motion to suppress. Dixon was sentenced to seventy-two months incarceration. Dixon timely appealed the district court's refusal to suppress the Glock.

**STANDARD OF REVIEW**

"We review the denial of a motion to suppress *de novo*, but will accept the district court's factual findings unless they are clearly erroneous." *United States v. Garrido*, 467 F.3d 971, 977 (6th Cir. 2006). "A factual finding 'is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Id*. (quoting *Tran v. Gonzales*, 447 F.3d 937, 943 (6th Cir. 2006)). "'The evidence must be considered in the light most favorable to the party that prevailed in the court below—in this case, the government.'" *United States v. Smith*, 594 F.3d 530, 535 (6th Cir. 2010) (quoting *Garrido*, 467 F.3d at 977).

3

**DISCUSSION**

Dixon argues on appeal that his detention by Officer Frisby was prolonged beyond the point justified by the traffic stop in order to pat search him, that it was therefore illegal under the Fourth Amendment, and that the evidence seized during this prolonged detention—the Glock found in the vehicle—must be suppressed as fruit of the poisonous tree. Dixon further argues that the plain-view doctrine does not apply because Officer Frisby's observation of the handgun occurred during an illegally prolonged detention.

We begin, as the district court did, by concluding that Officer Frisby unquestionably had the authority to stop the vehicle Rose was driving. It is a traffic violation in Ohio to drive with only one headlight. *See* Ohio Revised Code § 4513.04(A). As we recently held, "[w]hen law enforcement officers witness a traffic violation, they may stop the driver and his car. . . . [T]here is nothing 'unreasonable' about stopping a vehicle whose driver has just committed a traffic violation." *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010) (citations omitted).

It is established law that a traffic stop must "last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *United States v. Perez*, 440 F.3d 363, 370 (6th Cir. 2006) ("Once the purpose of an ordinary traffic stop is completed, the officer may not 'further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further detention.'" (quoting *United States v. Mesa*, 62 F.3d 159, 162 (6th Cir. 1995))). Here, however, Officer Frisby had not completed his traffic stop when he requested that Dixon exit the vehicle because Officer Frisby had not yet completed his actions in connection with the issuance or non-issuance of a citation to Rose for driving a vehicle with only a single operative headlight. Therefore, our prior decisions discussing

4

improper prolongations of traffic stops are not implicated; Officer Frisby was within his rights to request that Dixon exit the car for safety reasons while in the course of issuing a citation, even if the citation could have been issued with Dixon remaining within the car and even though removing Dixon from the car prolonged the traffic stop by approximately thirty seconds, as timed by a video recording of the encounter. "In the course of a stop premised on a traffic violation, police may instruct the driver or occupant to exit the vehicle." *Street*, 614 F.3d at 232. (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111 n.6 (1977)). "In *Mimms*, the Court held that 'once a motor vehicle has been lawfully detained for a traffic violation, the police officers may order the driver to get out of the vehicle without violating the Fourth Amendment's proscription of unreasonable searches and seizures.'" *Arizona v. Johnson*, 129 S. Ct. 781, 786 (2009) (quoting *Mimms*, 434 U.S. at 111 n.6). This bright line rule exists because "[t]raffic stops are fraught with danger to police officers, and the Fourth Amendment permits officers to conduct an otherwise-legitimate stop on their own terms—whether by keeping the driver (and occupants) in the car or by asking them to exit the car, depending on what they perceive as safer." *Street*, 614 F.3d at 232 (internal quotation marks and citations omitted). Here, while in the process of issuing a traffic citation to Rose, Officer Frisby perceived it to be necessary for his safety to have Dixon exit the car. This decision was within his discretion.

Because Officer Frisby ordered Dixon from the car and stood in close proximity to the passenger side car door, he was able to see the Glock within the vehicle. This is quintessentially what the plain-view doctrine permits. "Under ordinary circumstances, the plain view exception permits the warrantless seizure of an object provided that (1) the officer is lawfully positioned in a place from which the object can be plainly viewed; (2) the incriminating character of the object is

immediately apparent; and, (3) the officer has a lawful right of access to the object itself." *United States v. Bishop*, 338 F.3d 623, 626 (6th Cir. 2003). All of the prongs of the plain-view test were satisfied in this case. Officer Frisby was in a lawful position outside the open passenger door of the vehicle. The firearm was immediately recognizable as contraband: under Ohio law, it is illegal to store a firearm under the floor mat of a vehicle, *see* Ohio Rev. Code §§ 2923.12(A)(2); 2923.16(C). "The final requirement, that the officer have a lawful right of access to the object, is meant to guard against warrantless entry onto premises whenever contraband is viewed from off the premises in the absence of exigent circumstances, but does not bar the seizure of evidence in a parked car. The difference between 'lawfully positioned' and 'lawful right of access' is thus that the former refers to where the officer stands when she sees the item, and the latter to where she must be to retrieve the item." *Boone v. Spurgess*, 385 F.3d 923, 928 (6th Cir. 2004) (citations omitted). Therefore, Officer Frisby properly seized the firearm pursuant to the plain-view doctrine.

We agree with the district court that the pat search was irrelevant to the seizure of the firearm. We need not, therefore, consider the lawfulness of the pat search or whether, as the Government asserts, the exclusionary rule is inapplicable to the Glock's seizure because there was no causal, or "but-for," connection between the pat search and its discovery. *See United States v. Pearce*, 531 F.3d 374, 381 (6th Cir. 2008) (holding that the exclusionary rule is inapplicable where evidence has been obtained by means sufficiently separate from the illegal activity to be free of any taint).

**CONCLUSION**

Because the district court did not err in denying Dixon's motion to suppress, we AFFIRM.