**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 21-4002**

UNITED STATES OF AMERICA,

                Plaintiff - Appellee,

     v.

ROBERT WILLIAM MOATS,

                Defendant - Appellant.

Appeal from the United States District Court for the Southern District of West Virginia, at Charleston.  John T. Copenhaver, Jr., Senior District Judge.  (2:20-cr-00008-1)

Submitted:  September 28, 2021              Decided:  October 19, 2021

Before WILKINSON, FLOYD, and QUATTLEBAUM, Circuit Judges.

Affirmed by unpublished per curiam opinion.

John J. Balenovich, JOHN J. BALENOVICH LAW OFFICES, LC, Charleston, West Virginia, for Appellant.  Lisa G. Johnston, Acting United States Attorney, Courtney L. Cremeans, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Robert William Moats appeals his conviction pursuant to a conditional guilty plea to being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2), and possession of a firearm with the serial number removed in violation of 18 U.S.C. §§ 922(k), 924(a)(1)(B). In his plea agreement, Moats reserved the right to appeal the denial of his motion to suppress. Because we find that the district court properly denied Moats' motion to suppress evidence, we affirm.

The facts presented are as follows. Officers went to a residence to arrest a woman for whom there was an outstanding warrant for a probation violation. After receiving consent to search the home, they found the woman in the basement. She and Moats were asleep, side-by-side, in an oversized chair. The officers attempted to awaken both persons. Moats woke first. The officers asked him to stand and move to the other side of the room. When he stood up, the officers observed the handle of a gun sticking out of his front pants pocket. Although mere possession of a firearm was not unlawful in West Virginia, an officer took possession of the gun for safety reasons and placed it inside his coat. Another officer escorted Moats out of the residence.

The officer then woke the woman and arrested her. After taking her outside and handing her over to a patrol unit to transport to the police station, the officer told Moats that he was going to run the serial number on the gun to make sure it was not stolen and that he would return the gun after he made sure Moats was not a prohibited person or had an active domestic violence petition against him.

When the officer removed the gun from inside his coat and looked for the serial number, he noticed that the serial number had been removed. He then told Moats that the gun would not be returned to him and Moats said, "What gun?" and was allowed to walk away. Moats was later charged with being a felon in possession of a firearm and possessing a firearm with an obliterated serial number.

Moats moved to suppress evidence of the firearm, contending that the officers unlawfully seized him by waking him and directing him to stand up and move to another location and that the seizure of the firearm was unlawful. He also contended that the gun and its incriminating nature were not in plain view of the officers. He argued that, rather than waking him, the officers should have moved the sleeping woman, then awakened and arrested her. The district court denied the motion to suppress, finding that the officers acted reasonably by waking both Moats and the woman and by temporarily seizing the firearm in the interest of safety of the officers and others in the residence.

On appeal, Moats contends that he was unlawfully seized when the officers awakened him and required him to stand. He argues that the officers should have picked up the sleeping woman, moved her to another location in the basement, then awakened and arrested her. He also contends that the seizure of the gun was unlawful because it is legal to openly carry a firearm in West Virginia. Additionally, Moats contends that that he was unlawfully detained outside the house and that the gun was not lawfully seized under the plain view exception to the Fourth Amendment's warrant requirement.

"When reviewing a district court's ruling on a motion to suppress, this [c]ourt reviews conclusions of law de novo and underlying factual findings for clear error." *United*

3

*States v. Fall*, 955 F.3d 363, 369-70 (4th Cir.), *cert. denied*, 141 S. Ct. 310 (2020) (alterations and internal quotation marks omitted). "If, as here, the district court denied the motion to suppress, this [c]ourt construes the evidence in the light most favorable to the government." *Id.* (alterations and internal quotation marks omitted). "When reviewing factual findings for clear error, [this court] particularly defer[s] to a district court's credibility determinations, for it is the role of the district court to observe witnesses and weigh their credibility during a pre-trial motion to suppress." *United States v. Palmer*, 820 F.3d 640, 653 (4th Cir. 2016) (internal quotation marks omitted). Reversal is not warranted unless this court is "left with the definite and firm conviction that a mistake has been committed." *United States v. Crawford*, 734 F.3d 339, 342 (4th Cir. 2013) (internal quotation marks omitted).

When conducting a lawful search, law enforcement officers are authorized to temporarily detain individuals on the premises. *Michigan v. Summers*, 452 U.S. 692, 702-05 (1981). This temporary detention is justified by the need for officers to conduct the search, to prevent flight, and minimize the risk of harm to themselves and others. *Id.* at 705. We discern no clear error by the district court in finding that the temporary detention of Moats was reasonable in the interest of officer safety. Although the officer testified that it might have been possible to move the woman without waking Moats, he also testified that, in the interest of officer safety, he did not do so in order to avoid startling either the woman or Moats.

We further discern no clear error by the district court in finding that the officer acted reasonably by separating Moats from the woman in order to "gain control of the area" and

4

"for fundamental officer safety." We therefore conclude that the temporary seizure of Moats, which occurred when the officer awakened him and instructed him to stand and move to a different area, was reasonable under the circumstances. *See Summers*, 452 U.S. at 702-05.

When Moats stood up in response to the officer's direction, the handle of the gun was visible in Moats' pocket. The district court found that the officer acted prudently by seizing the weapon in the interest of officer safety. We agree. *See United States v. Malachesen*, 597 F.2d 1232, 1234 (8th Cir. 1979) (officer's temporary seizure, unloading, and retention of a handgun whose incriminating nature was not immediately apparent was a "reasonable precaution to assure the safety of all persons on the premises during search"); *see also United States v. Roberts*, 612 F.3d 306, 313-14 (5th Cir. 2010) (holding that officers who were conducting a protective sweep of an apartment acted reasonably in seizing firearms for safety reasons even though officers did not know at the time whether possession of the firearms was unlawful).

Moats next argues that he was unlawfully detained outside the residence because the officer had no reasonable, articulable suspicion that he was involved in criminal activity. We find no evidence that Moats was detained, questioned, or prevented from leaving the area. Rather, he was merely escorted out of the house while the officers arrested the woman and, upon being informed that the officer would not return the firearm, Moats walked away. No unlawful seizure occurred. *See United States v. Gray*, 883 F.2d 320, 322 (4th Cir. 1989) (noting variety of factors courts consider to determine whether a police-citizen encounter constitutes a seizure).

5

Lastly, Moats contends that the gun was not in plain view and that the incriminating nature of the gun—the obliterated serial number—was not immediately apparent. He therefore contends that the plain view doctrine does not apply.

The Fourth Amendment authorizes warrantless seizures of evidence when the officer is lawfully in the place from which the object may be plainly viewed, the officer has a lawful right of access to the object seized, and the object's incriminating character is immediately apparent. *United States v. Jackson*, 131 F.3d 1105, 1109 (4th Cir. 1997) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)). Here, the officer was lawfully in the home and had consent from the resident to search the home. Because the firearm was discovered in plain view while the officer was acting within the scope of that consent, the officer had lawful access to the firearm—and lawfully seized it in the interest of officer safety during the arrest of the woman. We conclude that the officer did not violate the Fourth Amendment by seizing the firearm. *See Malachesen*, 597 F.2d at 1234. And, having lawfully seized the firearm and upon observing the obliterated serial number, the officer became immediately aware of the incriminating nature of the firearm. Thus, the seizure of the firearm falls within the plain view doctrine. *See Jackson*, 131 F.3d at 1109; *United States v. Legg*, 18 F.3d 240, 245 (4th Cir. 1994) (upholding warrantless seizure of pistol with obliterated serial number found during search for other objects, finding that incriminating nature was immediately apparent). We discern no error in the district court's conclusion that Moats' Fourth Amendment rights were not violated and, on that basis, denying Moats' motion to suppress.

Accordingly, we affirm the district court's judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*