*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant,

v

LORENZO JAQUAN WILLIAMS,

      Defendant-Appellee.

FOR PUBLICATION
April 18, 2024
9:00 a.m.

No. 365299
Wayne Circuit Court
LC No. 22-004629-01-FH

Before: FEENEY, P.J., and REDFORD and YATES, JJ.

REDFORD, J.

Plaintiff appeals the trial court's grant of defendant's motion to suppress and dismissal of the charges against defendant of (1) being a felon in possession of a firearm, MCL 750.224f(5); (2) being a felon in possession of ammunition, MCL 750.224f(6); (3) carrying a concealed weapon, MCL 750.227(2); and (4) possession of a firearm during the commission of a felony, MCL 750.227b. The trial court based its decision on its conclusion that MCL 28.425f is unconstitutional because it permits police officers to stop a person carrying a concealed weapon to ask to see their concealed pistol license (CPL) without any suspicion the person is dangerous or committing a crime. We reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

At 11:38 p.m. on June 18, 2022, three Detroit police officers observed defendant walking near the intersection of Monroe and Beaubien Streets in Greektown. The officers noticed a bulge resembling a handgun under defendant's T-shirt near his waistband. One officer claimed to see the butt of the gun above defendant's shirt. The officers approached defendant and asked if he possessed a CPL. Two of the officers asserted that defendant did not answer and continued walking; the third officer claimed defendant said he did not have a CPL before attempting to walk away. The officers stopped defendant and patted him down, discovering a loaded handgun. Defendant did not have a CPL so the police arrested defendant and the prosecutor charged defendant as described.

Defendant moved to suppress evidence of the firearm. He contended that he obeyed all laws and caused no disturbance warranting police intervention. He claimed that the police lacked

-1-

justification for approaching and stopping him, and performing a warrantless search. Defendant asserted that the police violated his Fourth and Fourteenth Amendment rights because the officers lacked "probable cause to believe that any crime had been committed." He argued that the mere "vague observations of a gun, seen through a [T-]shirt as a bulge, on a dark summer night by officers walking a distance away, lack the requisite basis to allow such a search to occur" or even to allow them to make an investigatory stop. Defendant contended that the police acted on nothing more than a hunch making the stop and search illegal.

The trial court conducted two hearings to address defendant's motion to suppress. At the initial hearing, the court found the police officers' reports contradictory. Defense counsel took the position that defendant had walked down the street lawfully and if the police saw defendant in possession of a concealed weapon, such was not necessarily a crime. He asserted that the police attempted to start a conversation which defendant attempted to avoid and then the police stopped him. Defense counsel conceded that the police could ask a person if he had a CPL but asserted that the police reports indicated that defendant kept walking without answering, and only then did the police seize him which prompted defendant to respond. Defense counsel asserted that the officers lacked probable cause to believe a crime had been committed, and therefore, the officers violated defendant's Fourth Amendment rights. The prosecution relied on MCL 28.425f, opposed the motion, and argued that a person carrying a concealed weapon who has a CPL must provide the police the CPL and identification upon request. Defense counsel argued that Michigan is an open carry state and persons openly carrying or carrying a concealed weapon have no legal duty to stop and be seized, or respond to a police officer. The trial court stated that it believed that *Terry v Ohio*, 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), precluded police from asking people questions for no reason. The court asked the parties to brief the issue.

At the next hearing, the trial court distinguished the facts of this case from those of cases cited by the prosecution because those cases involved circumstances like a shooting or car accident which gave the police officers valid reasons to approach the suspect before noticing a weapon during the encounter. The court observed that no case indicated that police could stop a person when they saw a bulge that they believed was a firearm. The trial court stated that the prosecution bore the burden to establish justification for the seizure and search. The court questioned how MCL 28.425f did not violate *Terry* because not talking to the police and moving on constituted a constitutional right. The court expressed the opinion that the statute did not override *Terry* and *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and could not require a person to answer questions. The court stated that a police officer can ask a question regarding a CPL license but the individual has the right to not answer such a question. The trial court found MCL 28.425f unconstitutional and in violation of *Terry* and *Miranda*. The court granted defendant's motion to suppress and stated that it found MCL 28.425f unconstitutional. The court opined that an individual may decline to answer a police officer's question whether the person possessed a CPL. The trial court, therefore, entered orders granting defendant's motion to suppress and dismissing the charges against defendant without prejudice. The prosecution now appeals.

## II. STANDARD OF REVIEW

We review de novo questions of statutory interpretation. *People v Pinkney*, 501 Mich 259, 267; 912 NW2d 535 (2018). The goal of statutory interpretation "is to give effect to the Legislature's intent, focusing first on the statute's plain language." *Id*. at 268 (quotation marks

and citation omitted). When a statute's language is plain and unambiguous, we must apply it as written, without further interpretation. *Id*. We also review de novo the constitutionality of a statute. *People v Loper*, 299 Mich App 451, 457; 830 NW2d 836 (2013). "A statute is presumed constitutional and the party challenging the statute has the burden of proving its invalidity." *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009). After a suppression hearing, "[we] review de novo whether the Fourth Amendment was violated and whether an exclusionary rule applies." *People v Hyde*, 285 Mich App 428, 436; 775 NW2d 833 (2009). "We review for clear error a trial court's findings of fact in a suppression hearing, but we review de novo its ultimate decision on a motion to suppress." *Id*.

## III. ANALYSIS

MCL 750.227(2) proscribes carrying a concealed pistol without a license:

A person shall not carry a pistol concealed on or about his or her person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person, except in his or her dwelling house, place of business, or on other land possessed by the person, without a license to carry the pistol as provided by law and if licensed, shall not carry the pistol in a place or manner inconsistent with any restrictions upon such license.

MCL 776.20 states:

In any prosecution for the violation of any acts of the state relative to use, licensing and possession of pistols or firearms, the burden of establishing any exception, excuse, proviso or exemption contained in any such act shall be upon the defendant but this does not shift the burden of proof for the violation.

MCL 28.425f provides in relevant part:

(1) An individual who is licensed to carry a concealed pistol shall have his or her license to carry that pistol and his or her state-issued driver license or personal identification card in his or her possession at all times he or she is carrying a concealed pistol . . . .

(2) An individual who is licensed to carry a concealed pistol and who is carrying a concealed pistol . . . shall show both of the following to a peace officer upon request by that peace officer:

(a) His or her license to carry a concealed pistol.

(b) His or her state-issued driver license or personal identification card.

(3) An individual licensed under this act to carry a concealed pistol and who is carrying a concealed pistol . . . and who is stopped by a peace officer shall immediately disclose to the peace officer that he or she is carrying a pistol . . . concealed upon his or her person or in his or her vehicle.

MCL 750.227(2) plainly and unambiguously makes it a crime to carry a concealed weapon in public without a CPL. Under MCL 750.227(2), concealment "occurs when the pistol is not discernible by the ordinary observation of persons casually observing the person carrying it." *People v Kincade*, 61 Mich App 498, 504; 233 NW2d 54 (1975). "Absolute invisibility of a weapon is not indispensable to concealment; the weapon need not be totally concealed." *Id*. at 502. Evidence that a defendant placed a revolver in his belt or waistband so that the weapon could not be readily seen has been found sufficient to uphold a CCW conviction. *Id*. at 503.

MCL 776.20 places the burden on the defendant to prove his or her right to carry the weapon by producing his or her CPL. See generally, *People v Perkins*, 473 Mich 626, 637-639; 703 NW2d 448 (2005). MCL 28.425f requires a licensed individual to carry his or her CPL at all times he or she is carrying a concealed weapon and to show the CPL and identification "upon request" by a police officer. MCL 28.425f places no restrictions on when and under what circumstances an officer may ask a person if he or she is carrying a concealed weapon and whether such person has a CPL. The plain language of MCL 28.425f requires a CPL holder who is in possession of a concealed firearm to also have in their possession their CPL and either their state issued driver's license or identification and to provide both to law enforcement officers upon request.

We turn next to the question whether this violates the Fourth Amendment. Both the Michigan Constitution and United States Constitution guarantee the right of persons to be secure against unreasonable searches and seizures. Const 1963, art 1, § 11; US Const, Am IV. "Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." *United States v Drayton*, 536 US 194, 200; 122 S Ct 2105; 153 L Ed 2d 242 (2002); *People v Shabaz*, 424 Mich 42, 56; 378 NW2d 451 (1985), cert gtd 475 US 1094 (1986), cert dis 478 US 1017 (1986), citing *Florida v Royer*, 460 US 491, 497-498; 103 S Ct 1319; 75 L Ed 2d 229 (1983) (WHITE, J., concurring).

"Searches and seizures conducted without a warrant are unreasonable per se, subject to several specifically established and well-delineated exceptions." *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996), cert den 519 US 1081 (1997). One such exception is the *Terry* stop. Under *Terry*, "[p]olice officers may make a valid investigatory stop if they possess 'reasonable suspicion' that crime is afoot." *Champion*, 452 Mich at 98. "Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or 'hunch,' but less than the level of suspicion required for probable cause." *Id*., citing *United States v Sokolow*, 490 US 1; 109 S Ct 1581; 104 L Ed 2d 1 (1989).

> An officer who makes a valid investigatory stop may perform a limited patdown search for weapons if the officer has reasonable suspicion that the individual stopped for questioning is armed and thus poses a danger to the officer. *Terry* strictly limits the permissible scope of a patdown search to that reasonably designed to discover guns, knives, clubs, or other hidden instruments that could be used to assault an officer. [*Champion*, 452 Mich at 99 (citation omitted).]

In *Northrup v Toledo Police Dep't*, 785 F3d 1128 (CA 6, 2015), the United States Court of Appeals for the Sixth Circuit faced a similar scenario. Shawn Northrup was walking his dog

with other family members and carried a firearm in a holster at his waist. A passing motorist saw the firearm and called 911. The 911 operator indicated that Ohio permitted the open carry of firearms, but dispatched a police officer to investigate anyway. The parties provided conflicting details of Northrup's interaction with the responding officer. The officer disarmed Northrup and asked for his driver's license and concealed-carry permit. The officer placed Northrup in handcuffs and put him in the patrol car on suspicion that he had committed the Ohio statutory offense of inducing panic. The officer looked up Northrup's driver's license and discovered that he had a concealed-carry permit, which made Northrup's conduct legal. *Id*. at 1130. Northrup later sued the officer and other members of the police department for violating his constitutional rights.

The Sixth Circuit acknowledged that the Fourth Amendment permits consensual encounters on public streets between individuals and officers, during which the individual may choose to answer questions posed by the officer. "But it does prevent the police from stopping and frisking individuals in the absence of 'reasonable suspicion' that the individual has committed, or is about to commit, a crime." *Id*. at 1131, citing *Terry*, 392 US at 21. Ohio Rev Code § 9.68(C)(1) "permits the open carry of firearms . . . and thus permitted Northrup to do exactly what he was doing." *Northrup*, 785 F3d at 1131. The Court continued:

> Clearly established law required [the officer] to point to evidence that Northrup may have been "armed *and dangerous*." *Sibron v New York*, 392 US 40, 64; 88 S Ct 1889; 20 L Ed 2d 917 (1968) (emphasis added). Yet all he ever saw was that Northrup was armed—and legally so. To allow stops in this setting "would effectively eliminate Fourth Amendment protections for lawfully armed persons." *United States v King*, 990 F2d 1552, 1559 (CA 10, 1993); accord [*Ubiles*, 224 F3d at 218]; [*Black*, 707 F3d at 540]; *United States v Roch*, 5 F3d 894, 899 (CA 5, 1993).

> This requirement and the impropriety of [the officer's] demands are particularly acute in a State like Ohio. Not only has the State made open carry of a firearm legal, but it also does not require gun owners to produce or even carry their licenses for inquiring officers. See Ohio Rev Code §§ 9.68(C)(1), 2923.12; DeWine, Ohio Att'y Gen, Ohio's Concealed Carry Laws and License Application 15 (2015) ("Ohio's concealed carry laws do not regulate 'open' carry of firearms. If you openly carry, use caution. The open carry of firearms is a legal activity in Ohio."); R 26 at 121 ("If an officer engages in a conversation with a person who is carrying a gun openly, but otherwise is not committing a crime, the person cannot be required to produce identification."). [*Northrup*, 785 F3d at 1132.]

The Sixth Circuit addressed the question: "What about the possibility that Northrup was not licensed to carry a gun or that he was a felon prohibited from possessing a gun?" *Id*. The court answered:

> Where it is lawful to possess a firearm, unlawful possession "is not the default status." There is no "automatic firearm exception" to the *Terry* rule. [*Id*. (citations omitted).]

An officer must independently assess whether a person openly carrying a weapon appears dangerous, and only then may the officer inquire about the person's licensure. *Id*. at 1133.

Defendant relies heavily on *Northrup* to invalidate his search and seizure. The prosecution cites other cases, some unpublished, distinguishing *Northrup* under Michigan law. The legal reasoning in those opinions is instructive. See *Jewett v Mesick Consol Sch Dist*, 332 Mich App 462, 471 n 7; 957 NW2d 377 (2020) (stating decisions from lower federal courts may be "instructive and persuasive"); *Cadillac Rubber & Plastics, Inc v Tubular Metal Sys, Inc*, 331 Mich App 430 n 6; 952 NW2d 576 (2020) (stating the same principle for unpublished federal caselaw).

In *United States v Galaviz*, 645 F3d 347, 356 (CA 6, 2011), which is cited in many of the unpublished cases relied on by the prosecution, the United States Court of Appeals for the Sixth Circuit noted: "In Michigan, it is a crime to carry a pistol in a vehicle without a firearm license. MCL 750.227; see also MCL 776.20 (placing burden of establishing possession of license on the defendant)." The Michigan Supreme Court also emphasized this difference in *People v Henderson*, 391 Mich 612, 616; 218 NW2d 2 (1974):

> The language in [MCL 750.227] "without a license so to carry said pistol as provided by law" does not add an element to the crime, but simply acknowledges that a person may be authorized so to carry a pistol. This is of [sic] the essence of a license.
>
> A license is the permission by competent authority to do an act which, without such permission, would be illegal.
>
> Accordingly we hold that upon a showing that a defendant has carried a pistol in a vehicle operated or occupied by him, prima facie case of violation of the statute has been made out. Upon the establishment of such a prima facie case, the defendant has the burden of injecting the issue of license by offering some proof— not necessarily by official record—that he has been so licensed. The people thereupon are obliged to establish the contrary beyond a reasonable doubt.

See also *Perkins*, 473 Mich at 638-639 (2005) (reaffirming *Henderson*).

The United States District Court for the Eastern District of Michigan addressed the issue head-on, ruling *Northrup* does not control in cases involving Michigan law. In *United States v Culver*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued October 18, 2022 (Case No. 22-cr-20112), pp 10-11, the defendant challenged the seizure of his firearm, arguing: "Michigan allows concealed carry of a pistol with the proper permit, MCL 28.425f (1) and (2); therefore, according to this argument, police officers were not authorized under *Terry v Ohio* to seize the firearm or conduct a stop or frisk of [the defendant's] person based on finding it." The defendant relied on *Northrup*, 785 F3d at 1131-1133, for the proposition "that under Ohio gun laws, officers need evidence of criminality or dangerousness before they can detain and disarm a law-abiding citizen." *Culver*, unpub op at 11. The court noted:

> However, caselaw from the Sixth Circuit and the Eastern District of Michigan has distinguished *Northrup* based on the differences in state law between Ohio and Michigan. In Ohio, carrying a firearm is presumptively legal, whereas in Michigan,

it is a prima facie violation of state law that is rebuttable by raising the issue of licensure and offering proof that the possession was lawful. [*Culver*, unpub op at 11.]

The court continued by noting that several unpublished opinions from the federal district courts had acknowledged "[t]his difference in legal presumptions." *Id*. at 11-12. "Thus, *Northrup* does not support [the defendant's] argument that his possession of the firearm was presumptively lawful." *Id*. at 12.

The *Culver* court approved the officer's interactions with the defendant as well.

"[A] police officer who discovers a weapon in plain view may at least temporarily seize that weapon if a reasonable officer would believe, based on specific and articulable facts, that the weapon poses an immediate threat to officer or public safety." *United States v Bishop*, 338 F3d 623, 628 (CA 6, 2003)[, cert den 540 US 1206 (2004)]. Given firearms' "inherently dangerous nature," this standard applies "even if a loaded handgun is legally possessed." *United States v Atchley*, 474 F3d 840, 850 (CA 6, 2007)[, cert den 550 US 965 (2007)]. [*Culver*, unpub op at 12-13.]

Ultimately, the court determined "once spotted in plain view, [the defendant's] firearm was subject to seizure by [the officer] based on both the presumption of unlawful carry and the justifiable safety concern." *Id*. at 13.

In *United States v Williams*, 483 Fed Appx 21, 26-27 (CA 6, 2012), cert den 568 US 919 (2012), the trial court erred in concluding " '[g]iven the increased instances in Michigan of individuals being given permits to carry concealed weapons one cannot conclude that carrying a handgun in a car is likely to be against the law.' " The *Williams* Court relied on *Galaviz*, 645 F3d at 356, for the proposition:

Michigan law in fact compels the opposite conclusion. Michigan statutes make it a crime to carry a pistol "concealed or otherwise, in a vehicle operated or occupied by" the carrier. MCL 750.227(2). Additionally, the individual has the burden of demonstrating that he has a license to carry the pistol. MCL 776.20. As a result of this statutory structure, merely showing that a defendant carried a pistol in a vehicle he owns or operates establishes a prima facie violation of state law; at that point, it is up to the defendant to raise the issue of licensure and offer proof that his possession was lawful. [*Henderson*, 391 Mich at 612.] [*Williams*, 483 Fed Appx at 27.]

The *Williams* Court noted that in *Galaviz*, the Sixth Circuit

determined that because Michigan law prohibits carrying a handgun in a vehicle without a license and because the burden of establishing the license is on a defendant, the incriminating nature of a gun in plain view in the vehicle was "immediately apparent" for purposes of establishing probable cause under the plain-view exception. *Galaviz*, 645 F3d at 356. Along similar lines, we also determined that merely viewing the gun in the car gave officers probable cause to

conduct a warrantless search under the automobile exception. *Id*. at 357. . . . [*Williams*, 483 Fed Appx at 27.]

The court held that an "informant's tip that the driver of the Cadillac was in possession of a handgun amounted to an allegation that the driver was engaged in illegal conduct, especially for purposes of the lesser reasonable-suspicion standard," justifying a stop. *Id*.

In *United States v Bridges*, unpublished opinion of the United States District Court for the Eastern District of Michigan, issued July 21, 2016 (Case No. 16-cr-20089), p 7 (quotation marks and citation omitted), the court found "the initial encounter between the officers and the defendant was consensual," which was "permissible without any particularized suspicion because no seizure has occurred for purposes of the Fourth Amendment." The officers asked the defendant if he had a CPL, an activity not forbidden by the Fourth Amendment. *Id*. The officers triggered the Fourth Amendment, however, when they conducted a pat-down search for weapons "because at that moment it was clear that the defendant was no longer free to walk away." *Id*. Under *Terry*, an officer may pat down a person "when they have reason to believe that they are 'dealing with an armed and dangerous individual.' " *Id*. at 8. But "there is no 'firearm exception' to the *Terry* analysis"; "a tip alleging an illegal gun by itself is not sufficient to justify a stop and frisk." *Id*.

In *Bridges*, the officers relied not only on a tip about an armed individual, but also their observation of "a bulge in the shape of a gun in the defendant's pocket." *Id*. at 9. The *Bridges* Court cited several cases in which an officer was investigating a robbery or shooting or there were other factors in addition to observing a bulge in a person's clothing, which justified stopping and frisking the individual. *Id*. at 9-11. The defendant argued that the officers' observation of a bulge along with the tip they received about an armed individual was insufficient to justify detaining and frisking him. He relied on *Northrup*'s statement: "Where it is lawful to possess a firearm, unlawful possession 'is not the default status.' " The *Bridges* Court distinguished *Northrup* as follows:

> *Northrup*, however, addressed the open carry of a firearm in Ohio, whereas here, the defendant concealed the firearm. The *Northrup* court noted that "Ohio's concealed carry laws do not regulate 'open' carry of firearms." *Northrup*, 785 F3d at 1132 . . . . Therefore, Northrup's conduct could not establish a reasonable suspicion of criminal activity in *Northrup*. The *Northrup* panel found that Ohio gun laws, and the Fourth Amendment, cannot simply be disregarded "by detaining every 'gunman' who lawfully possesses a firearm." *Id*. at 1133.

> By contrast, in Michigan,

> (1) [a]n individual who is licensed to carry a concealed pistol shall have his or her license to carry that pistol and his or her state-issued driver license or personal identification card in his or her possession at all times he or she is carrying a concealed pistol. . . .

> (2) An individual who is licensed to carry a concealed pistol and who is carrying a concealed pistol . . . shall show both of the following to a peace officer upon request by that peace officer:

> (a) His or her license to carry a concealed pistol.

-8-

(b) His or her state-issued driver license or personal identification card.

MCL 28.425f(1) and (2).  In Michigan, it is illegal to "carry a pistol concealed on or about [one's] person, or, whether concealed or otherwise, in a vehicle operated or occupied by the person . . . without a license to carry the pistol as provided by law."  MCL 750.227(2).  A person in violation of Michigan's concealed carry law is guilty of a felony.  MCL 750.227(3).  [*Bridges*, unpub op at 11-12.]

Based on this distinction, the *Bridges* Court ruled:

> When the police officers saw the outline of a gun in the defendant's pocket, it was proper, under Michigan law, to inquire whether the defendant was in possession of a [CPL].  The failure to produce the license supported the conclusion that the defendant was committing a felony.  Therefore, the police officers articulated specific facts that justified the investigatory detention.  [*Id*. at 12.]

Under the facts of the case, the court found the pat-down search reasonable and justified.  *Id*. at 13.  "The officers did not detain the defendant for any longer than necessary to investigate whether he was carrying a firearm lawfully."  *Id*.

In *United States v Graham*, 627 F Supp 3d 785, 787 (ED Mich, 2022), officers approached the defendant in a convenience store when they observed the butt of a gun sticking out of his pocket.  The officers asked the defendant for his CPL.  The defendant did not resist, admitted he did not have a CPL, and explained he had just taken the gun away from his teenaged son.  The officers placed the defendant under arrest for carrying a concealed weapon without a license.  *Id*.

The district court found the officers had reasonable suspicion the defendant was committing a crime based on their observance of the concealed handgun, permitting them to stop the defendant to ask whether he had a CPL.  *Id*. at 788.  The court cited *Galaviz*, 645 F3d at 356, for the proposition that the defendant had the burden of establishing his right to carry a concealed firearm.  *Graham*, 627 F Supp 3d at 789-790.  The *Graham* Court continued:

> The same Michigan law that criminalizes carrying a pistol in a car without a license also criminalizes carrying a concealed pistol without a license.  MCL 750.227.  Accordingly, the same burden-allocation framework applies: the Government has a prima facie case that anyone carrying a concealed pistol is violating the law, but the carrier can defeat that case by showing that he or she has a license to do so.  MCL 776.20.

> Therefore, under *Galaviz*, the "incriminating nature" of the defendant's concealed pistol was "immediately apparent" to the Officers who saw it.  And [the defendant] does not argue that he gave the Officers any concrete reason to believe that he had a CPL (or any other reason to think that the pistol was not incriminating).

> Thus, based on the totality of the circumstances, the Officers had reasonable suspicion that [the defendant] was carrying a concealed pistol without a license.

And this suspicion allowed them to stop the defendant and investigate whether he had a license. [*Graham*, 627 F Supp 3d at 790.]

The plain language of MCL 28.425f permits a police officer to ask any person observed to be carrying a concealed weapon to produce his or her CPL, at any time and for any reason. MCL 750.227 also makes possession of a concealed weapon a presumptive crime, which can be rebutted by a suspect with evidence of a CPL. See *Galaviz*, 645 F3d at 356; *Henderson,* 391 Mich at 616.

Michigan law does not comport with *Northrup* which is substantively distinguishable from the case at bar. As stated in the unpublished federal cases of *Culver*, *Williams*, and *Bridges* and the published *Graham* case, an officer who suspects that a person is carrying a concealed weapon may approach the suspect and ask for proof of a CPL. We hold that under Michigan law a police officer has reasonable suspicion to approach a person and ask for proof of a CPL after observing a bulge in a person's clothing indicative of a hidden firearm. Accordingly, the trial court erred by suppressing the evidence of the firearm and dismissing the charges against defendant.[1]

We reverse the trial court's orders granting defendant's motion to suppress and dismissing the charges and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Kathleen A. Feeney
/s/ Christopher P. Yates

---

[1] We note that under Michigan law, and as acknowledged by the prosecution at oral argument, if the defendant were openly carrying a weapon, law enforcement would have had no probable cause to encounter him unless they knew he was a prior convicted felon or someone otherwise not authorized to possess a firearm.